UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT ZIMMERMAN

        Plaintiff,

   v.

UBS AG et al.,

        Defendants.

No. 17-cv-4503-JMF

 

**MEMORANDUM OF LAW IN SUPPORT OF
ERNST & YOUNG LLP'S MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Richard T. Marooney
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Phone:  (212) 556-2242
Fax: (212) 556-2200
Email: rmarooney@kslaw.com
*Counsel for Defendant Ernst & Young LLP*

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. iii

INTRODUCTION ................................................................................................................1

STATEMENT OF THE CASE.............................................................................................2

    A.      Procedural History .................................................................................2

    B.      Relevant Allegations in the Complaint ..................................................4

LEGAL STANDARD ...........................................................................................................5

    A.      Pleading Standards .................................................................................5

    B.      Documents the Court May Consider in Deciding This Motion to
             Dismiss...................................................................................................6

ARGUMENT ........................................................................................................................8

    A.      Plaintiff's Claims Against EY-US Are Refuted by Plaintiff's Own
             Allegations and the Securities Filings on Which the Claims Are
             Based.....................................................................................................8

            1.      EY-US did not prepare the disclosures in the CEFL
                     offering documents. .................................................................8

            2.      The allegedly "concealed" information was publicly
                     available. ................................................................................12

    B.      The Amended Complaint Fails to Plead Adequately Any Claim
             Against EY-US. ...................................................................................13

            1.      Plaintiff fails to plead a "securities fraud" claim (Count 4).......................14

            2.      Plaintiff fails to state a claim for "fraudulent inducement to
                     purchase CEFL," "fraudulent concealment," or "common
                     law fraud" (Counts 1, 3, and 6)...............................................18

            3.      Plaintiff fails to state a claim for "aiding and abetting
                     securities fraud" or for a "civil conspiracy to commit fraud"
                     (Counts 2 and 5)......................................................................19

             4.      Plaintiff fails to state a claim for "negligence" or "negligent
                     concealment" (Counts 7 and 8).................................................21

             5.      No cause of action exists against EY-US for breach of
                     fiduciary duty (Count 9)..........................................................22

             6.      Plaintiff fails to plead a claim for "aiding and abetting
                     breaches of fiduciary duties" (Count 10). .................................23

             7.      No cause of action exists against an auditor for "failure to
                     supervise" (Count 11). ...........................................................23

8.      Plaintiff fails to plead unjust enrichment against EY-US
        (Count 12). ...........................................................................................24

9.      Plaintiff has not demonstrated an entitlement to any relief
        or to punitive damages. .....................................................................24

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**        **Page(s)**

*In re Advanced Battery Techs., Inc.,*
  781 F.3d 638 (2d Cir. 2015)...............................................................................15, 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007)................................................................................5, 6

*Beauvoir v. Israel,*
  794 F.3d 244 (2d Cir. 2015)...............................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................5

*Blanco v. Polanco,*
  986 N.Y.S.2d 151 (App. Div. 2014) ......................................................................20

*Credit All. Corp. v. Arthur Andersen & Co.,*
  483 N.E.2d 110 (N.Y. 1985)..............................................................................21

*Drobner v. Bruce,*
  531 F. App'x 96 (2d Cir. 2013) .....................................................................10, 24

*EBC I, Inc. v. Goldman, Sachs & Co.,*
  832 N.E.2d 26 (N.Y. 2005)..............................................................................23

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,*
  553 F.3d 187 (2d Cir. 2009)...............................................................................5

*Garber v. Legg Mason, Inc.,*
  347 F. App'x 665 (2d Cir. 2009) .........................................................................8

*In re Gas Reclamation, Inc. Sec. Litig.,*
  659 F. Supp. 493 (S.D.N.Y. 1987) .....................................................................17

*Goh v. Baldor Elec. Co.,*
  No. 3:98-mc-64, 1999 WL 20943 (N.D. Tex. Jan. 13, 1999).................................10

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,*
  286 F.3d 613 (2d Cir. 2002)..............................................................................18

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996).................................................................................16

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)........................................................................................17

*Hollinger v. Titan Capital Corp.*,
    914 F.2d 1564 (9th Cir. 1990) ......................................................................24

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991)............................................................................7

*Iwachiw v. Port Auth. of N.Y. & N.J.*,
    151 F. App'x 93 (2d Cir. 2005) ....................................................................13

*J.A.O. Acquisition Corp. v. Stavitsky*,
    863 N.E.2d 585 (N.Y. 2007)..........................................................................21

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (App. Div. 2003) ..............................................................23

*Kurtz v. Foy*,
    884 N.Y.S.2d 498 (App. Div. 2009) ........................................................19, 22

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)...........................................................16

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011) .......................................................................19

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002).............................................................6

*McBride v. KPMG Int'l*,
    24 N.Y.S.3d 257 (App. Div. 2016) ................................................................20

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
    487 F. App'x 636 (2d Cir. 2012) ..................................................................22

*N.Y. Pet Welfare Ass'n v. City of New York*,
    850 F.3d 79 (2d Cir. 2017)..............................................................................6

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
    No. 03-cv-613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) .........................10

*S. Cherry St., LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009)............................................................................15

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006)............................................................16, 17

*San Leandro Emer. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996)........................................................................7

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977)..............................................................................18

*Sheldon v. Vermonty*,
No. 99-3202, 2000 WL 1774038 (10th Cir. Dec. 4, 2000)..................................14

*Finkel v. Stratton Corp.*,
962 F.2d 169 (2d Cir. 1992)....................................................................14

*Transam. Mortg. Advisors, Inc. (TAMA) v. Lewis*,
444 U.S. 11 (1979)..............................................................................14

*Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007).....................................................................15

*Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*,
222 F.3d 63 (2d Cir. 2000)......................................................................21

*SEC v. Apuzzo*,
689 F.3d 204 (2d Cir. 2012).....................................................................20

*Stewart v. Wilmington Tr. SP Servs.*,
112 A.3d 271 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015)........................22

*Stone v. Sutton View Capital, LLC*,
No. 17-cv-1574, 2017 WL 6311692 (S.D.N.Y. Dec. 8, 2017) ................................19

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
552 U.S. 148 (2008)..............................................................................20

*Tal v. Superior Vending, LLC*,
799 N.Y.S.2d 532 (App. Div. 2005) .............................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..............................................................................15

*Thomas v. N.Y. City Dep't of Educ.*,
No. 15-cv-8934 (JMF), 2016 WL 4544066 (S.D.N.Y. Aug. 31, 2016)....................6

*Tuttle v. Sky Bell Asset Mgt., LLC*,
No. 10-cv-3588, 2011 WL 4713233 (N.D. Cal. Oct. 7, 2011) ................................9

v

*UBS Fin. Servs., Inc. v. Zimmerman*,
    No. 5:15-cv-155 (E.D.N.C. June 30, 2016), ECF No. 33 ....................................2, 3

*Williams v. Williams*,
    53 N.Y.S.3d 152 (App. Div. 2017) ..............................................................................20

**Statutes**

15 U.S.C. § 77k ....................................................................................................................17

15 U.S.C. § 77*l* ....................................................................................................................17

15 U.S.C. § 78*i* ....................................................................................................................18

15 U.S.C. § 78m ..................................................................................................................18

15 U.S.C. § 78u-4 .............................................................................................................6, 15

15 U.S.C. § 77j ....................................................................................................................15

15 U.S.C. § 77*o* ..................................................................................................................14

15 U.S.C. § 77v ....................................................................................................................15

15 U.S.C. § 77w ..................................................................................................................15

15 U.S.C. § 77z-1 ................................................................................................................15

15 U.S.C. § 78t ....................................................................................................................14

15 U.S.C. § 78u ....................................................................................................................15

15 U.S.C. § 78z ....................................................................................................................15

15 U.S.C. § 78ff ..................................................................................................................15

15 U.S.C. § 78hh ..................................................................................................................15

Defendant Ernst & Young LLP submits this memorandum of law in support of its Motion to Dismiss the First Amended Complaint [Dkt. 65-1] filed by Robert Zimmerman ("Plaintiff").

## <u>INTRODUCTION</u>

Plaintiff allegedly invested in notes called CEFL, which were issued by UBS AG ("UBS"), through an account at Charles Schwab & Co. ("Schwab"). He now seeks to recover certain investment losses on the ground that, among other entities, UBS, Schwab, and Ernst & Young LLP ("EY-US") failed to disclose UBS's purported "vast criminal history" in the offering documents for CEFL. Plaintiff asserts that, had this information been disclosed in the one offering document that he read before investing, he would not have invested in CEFL and not sustained losses when his investment lost value. His allegations as to EY-US—which is the only Ernst & Young-related entity or person that has been served—fail for a number of reasons.

*First*, as Plaintiff seemingly acknowledges in his Amended Complaint, UBS's financial statement auditor was not EY-US but rather Switzerland-based Ernst & Young Ltd ("EY-Switzerland"). This fact is apparent on the face of documents cited in and attached to the Amended Complaint. The Amended Complaint is devoid of any particularized allegations of material wrongdoing against EY-US or any other Ernst & Young-related entity or person that is not contradicted by these documents.

*Second*, also apparent on the face of those documents is that the role of UBS's auditor in the CEFL offering documents consisted only of the incorporation of UBS's audited financial statements in those offering documents. Plaintiff does not claim that UBS's audited financial statements were misleading. Indeed, Plaintiff acknowledges that those financial statements disclose the type of information that he claims was concealed in the offering documents.

*Third*, Plaintiff acknowledges receiving and reviewing an offering document for CEFL, the "Product Supplement" to the CEFL Prospectus, and he states that he invested in "exclusive"

1

reliance on that document.  The Prospectus (linked to in the Product Supplement) expressly incorporates UBS's audited financial statements, containing disclosures of "significant litigation and similar risks arising from disputes and regulatory proceedings" that largely track the "undisclosed crimes."  Even granting leeway to a *pro se* Plaintiff, the Amended Complaint fails even the most forgiving standard of plausibility when it repeatedly asserts that EY-US and others "concealed" information that was publicly available in news articles, government websites, and USB's own financial statements.

   *Fourth*, none of the twelve counts in the Amended Complaint is adequately pleaded.

   For these reasons and others discussed below, the Amended Complaint should be dismissed.  Because Plaintiff's allegations and the documents on which he says he relied show that EY-US cannot be liable for any of the claims asserted, and because the Court already has granted Plaintiff leave to amend his pleading, the dismissal should be with prejudice.

## STATEMENT OF THE CASE

### A.     Procedural History

   In April 2016, after Mr. Zimmerman attempted to bring a FINRA arbitration against a UBS subsidiary, the subsidiary brought an injunctive action in federal court in North Carolina against him.  Zimmerman responded with a counterclaim, later amended to name UBS itself along with EY-US, in which he asserted largely the same allegations now made here: that UBS and EY-US failed to disclose UBS's "crimes" in the offering documents for the UBS-issued security he purchased.  (*See* Def.'s Am. Counterclaim, *UBS Fin. Servs., Inc. v. Zimmerman*, No. 5:15-cv-155 (E.D.N.C. June 30, 2016), ECF No. 33.)  He sued UBS and EY-US for, among other things, securities fraud, common-law fraud, negligent misrepresentation, and unjust enrichment.  (*Id.*)  EY-US was never served in that action, and on December 1, 2016, the North Carolina court dismissed Zimmerman's counterclaim as inadequately pleaded.  The court held,

among other things, that:

- "[Zimmerman's] first amended complaint fails to plead with particularity facts showing how [UBS's] alleged omission of information regarding its 'long history of . . . financial crimes,' would impact the share price of CEFL . . . ." (Order at 9, *UBS*, No. 5:15-cv-155 (E.D.N.C. Dec. 1, 2016), ECF No. 55 (first omission in original));

- "[W]hile [Zimmerman] does allege that [UBS] failed to disclose information regarding its criminal history 'with intent to deceive,' [Zimmerman] fails to allege sufficient facts substantiating this conclusory assertion." (*id.*); and

- "[Zimmerman] fails to allege that he 'made a reasonable inquiry into the misrepresentation . . . or that he could not have learned the true facts by exercise of reasonable diligence.'" (*id.* at 13-14 (citation omitted) (omission in original)).

On June 12, 2017, Plaintiff filed this action.  After UBS and EY-US moved to dismiss Plaintiff's original complaint, the Court ordered Plaintiff to respond or to file an amended complaint, noting that "Plaintiff will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  (Oct. 26, 2017 Order [Dkt. 35] at 1.)  Plaintiff chose the latter, and on January 10, 2018, he filed his First Amended Complaint (the "Amended Complaint").  In it, he repeats the allegations of non-disclosure and concealment he asserted in the North Carolina action (and in his original complaint here).  He purports to assert twelve claims against the originally-named defendants, including EY-US,[1] as well as several additional defendants, including what he calls "EY Global LLP," a London-based entity he calls "Ernst & Young Ltd.," and several individuals who purportedly work for these entities or EY-US.  Apart from EY-US, none of these entities has been served.  The Amended Complaint often fails to distinguish among the firms in its allegations, and it makes no substantive allegations regarding the individuals.

---

[1]     In the caption of the Amended Complaint, Plaintiff correctly identifies EY-US as "Ernst & Young LLP."  In the body of the pleading, however, he refers to "Ernst & Young LLC."  EY-US construes this as typographical error.  But if Plaintiff did, in fact, intend to make allegations about "Ernst & Young LLC," then EY-US should be dismissed on the ground that the Amended Complaint makes no allegations about EY-US.

B.        Relevant Allegations in the Complaint

Plaintiff alleges that he invested in a security known as CEFL, a leveraged index-tracking exchange-traded note issued by UBS, and that he sold his CEFL shares at a loss of between $180,000 and $400,000.  (Am. Compl. ¶¶ 9, 459-460.)  Plaintiff asserts that, had the CEFL offering documents set forth UBS's "vast criminal history," Plaintiff would have known of UBS's "crimes" and would not have invested in CEFL in the first place.  (*Id.* ¶¶ 540-541.)

Plaintiff alleges that he reviewed the CEFL Product Supplement to the Prospectus dated November 14, 2014 (the "Product Supplement").  (*Id.* ¶ 459 & Ex. F.)  The Product Supplement contains a "Risk-Factors" section disclosing various risks associated with investing in the security.  (*Id.* ¶¶ 223, 245 & Ex. F.)  (The Product Supplement and Prospectus expressly incorporated UBS's 2013 audited financial statements, as discussed below.)  After reading the Product Supplement, and purportedly in "exclusive[]" reliance on it and "the fact that UBS was a large international bank," Plaintiff claims, he began investing in CEFL.  (*Id.* ¶¶ 458-459, 795, 829, 865, 889, 903, 927, 948.)

Plaintiff alleges that, at some point after he purchased CEFL, he discovered that UBS has a "vast criminal history" that was not disclosed in the "Risk Factors" identified in the Product Supplement.  (*Id.* ¶¶ 327, 335.)  Plaintiff learned of these alleged "crimes" from public sources, including websites and UBS's 2015 and 2016 Annual Reports—specifically, Note 22 to UBS's 2015 financial statements and Note 20 to UBS's 2016 financial statements.  (*E.g.*, *id.* ¶¶ 234, 349, 680.)  In particular, Plaintiff learned of what he calls "26 material risk factors" such as that UBS paid certain penalties and entered into various settlements with regulators and civil plaintiffs.[2]  (*See generally id.* ¶¶ 334-381.)  Plaintiff dubs these penalties and settlements

---

[2]        Despite Plaintiff's label, it is not clear from the Amended Complaint how Plaintiff calculates the total of twenty-six "material risk factors."

"criminal," and he alleges that EY-US failed to disclose them in the Product Supplement.  (*Id.* ¶¶ 202, 327, 540.)  Had they been disclosed, Plaintiff says, he never would have invested in CEFL.  (*Id.* ¶¶ 540-541.)  The Amended Complaint seeks declaratory and injunctive relief, actual damages, and punitive damages of $100 million.

## LEGAL STANDARD

### A.  Pleading Standards

On a motion to dismiss under Rule 12(b)(6), a plaintiff bears the burden of pleading facts from which the court can reasonably infer that the defendants are liable.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must dismiss a plaintiff's complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is not enough for a plaintiff to plead "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Pleading facts that could conceivably support a finding of liability, or providing only formulaic recitations of legal elements devoid of specific facts, is legally insufficient. *See Twombly*, 550 U.S. at 57; *Iqbal*, 556 U.S. at 678.  "Allegations that are conclusory or unsupported by factual assertions [also] are insufficient."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

A plaintiff asserting fraud claims must meet an even higher pleading standard by satisfying Rule 9(b) of the Federal Rules of Civil Procedure.  *See ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  Specifically, a plaintiff must "state with particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  The Second Circuit has interpreted Rule 9(b) to require that the complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." *ATSI*, 493 F.3d at 99.

A claim of securities fraud must conform to these Rule 9(b) requirements and also meet the requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  Under the PSLRA, the plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  *See* 15 U.S.C. § 78u-4(b)(1).  A plaintiff also must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *i.e.*, scienter.  15 U.S.C. § 78u-4(b)(2)(A); *ATSI*, 493 F.3d at 99. Moreover, a plaintiff must plead facts sufficient to establish that defendant's alleged misconduct caused the loss for which the plaintiff seeks to recover damages.  *See* 15 U.S.C. § 78u-4(b)(4).

### B.        Documents the Court May Consider in Deciding This Motion to Dismiss

On a motion to dismiss, the court considers not only the allegations in the complaint itself but also "documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading."  *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (citing *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991)).  The court may also consider "matters subject to judicial notice."  *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017) (citing *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014) (per curiam)).  If these documents and matters contradict allegations in the complaint and show that a plaintiff is not entitled to relief, the motion to dismiss should be granted.  *See, e.g.*, *Thomas v. N.Y. City Dep't of Educ.*, No. 15-cv-8934 (JMF), 2016 WL 4544066, at *1 (S.D.N.Y. Aug. 31, 2016) ("[T]he facts in the Amended Complaint are assumed to be true unless they are contradicted by documents the Court may consider, including documents attached to the Amended Complaint."), *aff'd*, No. 16-3215, 2017 WL 4534775 (2d Cir. Oct. 11, 2017); *Matusovsky*, 186 F. Supp. 2d at 400 ("[I]f a plaintiff's allegations are

contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." (citations omitted); *see also Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015) (affirming dismissal where "threadbare recital [of allegation] is contradicted by the [letter], attached as an exhibit to the [plaintiffs'] complaint").

Plaintiff bases his claims against EY-US on alleged omissions in the Product Supplement to the CEFL Prospectus. He supports his claims by pointing to UBS's 2015 and 2016 Annual Reports—documents filed with the SEC that the Complaint extensively quotes and attaches excerpts as exhibits. This Court may therefore consider, in deciding EY-US's Motion to Dismiss, complete versions of the following documents, true and correct copies of which are attached as exhibits to the accompanying Declaration of Kevin J. O'Brien ("Decl."):

- the CEFL Product Supplement (Decl. Ex. A);

- the CEFL Prospectus (Decl. Ex. B) (incorporated by reference in the Product Supplement);

- UBS's 2013 Annual Report (Decl. Ex. C) (containing UBS's 2013 audited financial statements, which are incorporated by reference in the Prospectus);

- UBS's 2015 Annual Report (Decl. Ex. D); and

- UBS's 2016 Annual Report (Decl. Ex. E).[3]

*See, e.g.*, *San Leandro Emer. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 809 (2d Cir. 1996) (where a prospectus "partially quoted in the Complaint" was "integral" to the complaint, "the District Court was entitled to consider the full text" of the prospectus); *Pincus*, 936 F.2d at 762 (on motion to dismiss claim based on misrepresentation in a prospectus, "[t]he prospectus is integral to the complaint" and may be considered even if it is not attached to the

---

[3]      Excerpts of all of these documents, except for UBS's 2013 Annual Report, are attached as exhibits to the Amended Complaint. The exhibits submitted with this motion are complete copies of the documents.

complaint); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (court may take judicial notice of regulatory filings like SEC filings).

## ARGUMENT

**A.**    **Plaintiff's Claims Against EY-US Are Refuted by Plaintiff's Own Allegations and the Securities Filings on Which the Claims Are Based.**

This Court does not need to wade through the specific causes of action pleaded by Plaintiff against EY-US because, as a threshold matter, the claims are refuted by Plaintiff's own allegations and by the very documents on which those allegations are based.  This is true for two independent reasons.  First, Plaintiff's claims against EY-US are based on the non-disclosure of UBS's "crimes" and "material risk factors" in the CEFL offering documents.   But those documents show that EY-US had no role in their preparation or issuance, as EY-US was not UBS's auditor, and that no auditor was responsible for the risk disclosures in those documents.  Second, the offering documents include (or incorporate) the very disclosures Plaintiff complains were lacking, thereby rendering any claim of "concealment" facially implausible.

### 1.    *EY-US did not prepare the disclosures in the CEFL offering documents.*

Plaintiff's claims against EY-US (as well as his claims against "EY Global LLP," London-based "Ernst & Young Ltd.," and the individuals he alleges are affiliated with these firms) are all predicated on the assertion that the CEFL Prospectus (or its Product Supplement) improperly failed to disclose UBS's "crimes," and in particular what Plaintiff calls the "26 material risk factors."   (*See, e.g.*, Am. Compl. ¶¶ 202, 327, 540.)   Specifically, Plaintiff complains that UBS's financial-statement auditor failed to include these "crimes" and "risk factors" in the "Risk Factors" section of the Product Supplement.  (*Id.* ¶¶ 202, 327, 540.)   There is no facially plausible allegation, however, that EY-US or any other auditor had any role in drafting the Product Supplement's "Risk Factors."   The *only* reference to auditors or to work

performed by auditors in any portion of the offering documents is in the "Experts" section of the

Prospectus, which states:

> Ernst & Young Ltd, independent registered public accounting firm, has audited our consolidated financial statements included in our Annual Report on Form 20-F for the year ended December 31, 2013, and the effectiveness of our internal control over financial reporting as of December 31, 2013, as set forth in their reports, which are incorporated by reference in the prospectuses and elsewhere in the registration statement.  Our financial statements are incorporated by reference in reliance on Ernst & Young Ltd's reports, given on their authority as experts in accounting and auditing.

(CEFL Prospectus [Decl. Ex. B] at 76.)  This language demonstrates two important facts: (i) EY-

US was not UBS's auditor—that role belonged to Ernst & Young Ltd; and (ii) the role of UBS's

auditor was limited to the incorporation into the offering documents of UBS's 2013 financial

statements, which Plaintiff does not allege to have contained a misrepresentation (or to otherwise

give rise to any of his claims).

 *EY-US was not UBS's auditor*.  As the CEFL Prospectus states, the auditor of UBS's

financial statements was Ernst & Young Ltd (not Ernst & Young LLP)—a fact confirmed not

only by the 2013 financial statements referenced by the Prospectus but also by the 2015 and

2016 financial statements and audit reports specifically cited throughout (and attached to) the

Amended Complaint.  Those documents all show that the financial-statement auditor for UBS, a

Switzerland-based entity, was "Ernst & Young Ltd" with an address in Basel, Switzerland ("EY-

Switzerland").  (*See* UBS 2013 Annual Report [Decl. Ex. C] at 1, 344, 346-49; UBS 2015

Annual Report [Decl. Ex. D] at 394-97, 564-67; UBS 2016 Annual Report [Decl. Ex. E] at 309-

11, 463-65; *see also* Am. Compl. Ex. D (a composite of EY-Switzerland's audit reports for UBS

from 2013 through 2016).)[4]

---

[4]     Although EY-US and EY-Switzerland each are member firms of the same global network, they are entirely independent firms, as courts consistently recognize. *See, e.g.*, *Tuttle v. Sky Bell Asset Mgt., LLC*, No. 10-cv-3588, 2011 WL 4713233, at *1 (N.D. Cal. Oct. 7, 2011)

After EY-US pointed this out in its motion to dismiss the original complaint, Plaintiff no longer appears to claim that EY-US was UBS's auditor.  (*See* Am. Compl. ¶¶ 6, 347.) Nevertheless, Plaintiff leaves his claims against EY-US virtually intact.  He does so on the grounds that EY-US audited the financial statements of a different UBS entity, UBS Securities LLC, and that certain of EY-Switzerland's audit reports on UBS's financial statements were signed by an American CPA, Troy Butner.  As for the former ground, Plaintiff does not allege that any of his claims arise from UBS Securities LLC's financial statements (or that he ever read or relied on those financial statements).  And as for the latter ground, Mr. Butner's nationality has no bearing on that fact that the audit reports in question were unequivocally issued by, and signed on behalf of, EY-Switzerland.[5]

*UBS's auditor did not conceal information*.  Regardless of who UBS's auditor was, the "Experts" section of the CEFL Prospectus also shows that that auditor did not make any complained-of misrepresentations or omissions.  That section does nothing more than refer to and incorporate UBS's 2013 audited financial statements—consistent with the professional standards governing an auditor's role in offering documents.  Plaintiff asserts that "EY was

(noting that two Ernst & Young entities have no relationship "except that both are members of Ernst & Young Global Limited, which is a global organization of member firms practicing under the Ernst & Young brand, but which are all separate legal entities"); *Goh v. Baldor Elec. Co.*, No. 3:98-mc-64, 1999 WL 20943, at *3 (N.D. Tex. Jan. 13, 1999) (same); *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03-cv-613, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) (collecting cases) ("Member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name.").

[5]     As noted, Plaintiff also names as defendants "Ernst & Young Ltd.," with an address in London, and "EY Global LLP," also with an address in London.  (Am. Compl. ¶¶ 7-8.)  Neither of these entities is Basel-based EY-Switzerland.  In any event, neither has been served, and for the reasons outlined in the remainder of this motion (i.e., the lack of liability of any auditor and Plaintiff's failure to properly plead any cause of action), it would be futile to allow them or any of the individual defendants affiliated with Ernst & Young to be served.  *See Drobner v. Bruce*, 531 F. App'x 96, 98 (2d Cir. 2013) (affirming district court's refusal to allow service of futile complaint on unserved defendants).

required" by auditing standards promulgated by the Public Company Accounting Oversight Board ("PCAOB") "to ensure that the offering document for CEFL presented fairly and in all material respects all matters that would inform prospective investors['] decisions in assessing the pros and cons of UBS security offerings."  (Am. Compl. ¶ 719.)  In fact, the actual auditing standards promulgated by the PCAOB make clear that "management has the responsibility for the financial representations contained in documents filed under the federal securities statutes." PCAOB, AS 4101.01 (Responsibilities Regarding Filings Under Federal Securities Statutes).[6] When the "experts section" of a prospectus references and incorporates an audit report on financial statements (as does the CEFL Prospectus), the auditor's responsibilities with respect to the prospectus are to "read the relevant section of the prospectus," as well as "other sections of the prospectus," "to make sure that his name is not being used in a way that indicates that his responsibility is greater than he intends."  *Id.* 4101.08-.09.   Thus, UBS's auditor—EY-Switzerland, the auditor of the 2013 financial statements incorporated into the CEFL Prospectus—was required only to ensure that its name was used appropriately in the Prospectus. As noted, the Prospectus attributes nothing to the auditor other than the fact that it audited UBS's incorporated financial statements—which do not form the basis of any of Plaintiff's claims.

Plaintiff has not plausibly alleged that UBS's auditor had any duties with respect to any part of the CEFL Prospectus (including its Product Supplement) other than the incorporated 2013 audited financial statements.  Further, Plaintiff has not pleaded as the factual basis of any claim the content of UBS's 2013 audited financial statements, and those financial statements contradict

---

[6]     The PCAOB reorganized its auditing standards effective December 31, 2016.  Standard AS 4101 (cited above) was, before then, known as AU § 711.  *See generally* PCAOB, *PCAOB Auditing Standards Reorganized and Pre-Reorganized Numbering* (Jan. 2016), https://pcaobus.org/Standards/Auditing/Documents/PrintableReferenceTable.pdf.   The relevant provisions of the current AS 4101 are, for all relevant time periods, identical to those of the former AU § 711.

the allegations in the Complaint.  Accordingly, Plaintiff's claims fail and should be dismissed.

### 2. *The allegedly "concealed" information was publicly available.*

The CEFL offering documents not only show that EY-US did not conceal or fail to disclose information but that the allegedly concealed information was, in fact, disclosed. Plaintiff acknowledges that most (if not all) of the conduct he identifies was fully disclosed in UBS's publicly-available, SEC-filed 2015 and 2016 Annual Reports and on government websites.  (*See* Am. Compl. ¶¶ 95, 234, 650, 675, 680-681, 694-699.)  Indeed, Plaintiff points to the disclosures in these documents as the disclosures that should have been made in the CEFL offering documents.  (*See, e.g.*, *id.* ¶ 233.)  Yet Plaintiff ignores the remarkably similar Note 22 to UBS's 2013 financial statements—which were specifically incorporated into the CEFL Prospectus.  (*See* CEFL Prospectus [Decl. Ex. B] at 76; *see also* UBS 2013 Annual Report [Decl. Ex. C] at 416-25.)

Note 22 to the 2013 financial statements discloses, for example, UBS's alleged involvement in the manipulation of LIBOR (UBS 2013 Annual Report [Decl. Ex. C] at 422-23), "irregularities in the foreign exchange markets" (*id.* at 424), litigation stemming from the Bernie Madoff fraud (*id.* at 420-21), and a December 2012 non-prosecution agreement with the Department of Justice (*id.* at 422; *see also id.* at 16).  Plaintiff alleges that these same incidents, as disclosed in UBS's 2015 and 2016 financial statements and on government websites, are the "crimes" and "material risk factors" that UBS, EY-US, and others failed to disclose.  (*See* Am. Compl. ¶¶ 350, 746 (the December 2012 non-prosecution agreement); *id.* ¶¶ 676-677 (Madoff-related claims); *id.* ¶¶ 352, 678 (LIBOR manipulation); *id.* ¶ 171-172, 177 (foreign-exchange rate rigging).)  To build upon just one example: contrary to Plaintiff's allegation that UBS concealed a non-prosecution agreement with the Department of Justice and the alleged conduct on which it was based (*id.* ¶ 350), UBS's publicly available 2013 Annual Report—which was expressly

12

incorporated by the Prospectus that the Product Supplement was supplementing—not only describes that non-prosecution agreement and its allegations but also attaches a copy.  (UBS 2013 Annual Report [Decl. Ex. C] at 16, 422.)

The Amended Complaint fails any standard of plausibility when it asserts that publicly available documents and information that were discussed or incorporated into CEFL's offering documents were "concealed" by EY-US and others.  The claims should be dismissed.

### B.    The Amended Complaint Fails to Plead Adequately Any Claim Against EY-US.

Because of the Amended Complaint's threshold flaws—failing to establish any underlying misrepresentation or omission by EY-US (or any other auditor) and asserting that disclosed information was concealed—the Court need not parse the individual claims.  Indeed, the Court has no obligation to do so.  Plaintiff's 976-paragraph, 197-page Amended Complaint fails to articulate clearly the causes of action it purports to assert, leaving it largely to the defendants and this Court to guess.  *See Iwachiw v. Port Auth. of N.Y. & N.J.*, 151 F. App'x 93, 93 (2d Cir. 2005) (affirming district court's dismissal with prejudice for failure to comply with Rule 8(a) because, "[e]ven after construing appellant's *pro se* amended complaint liberally, the true substance of his claims cannot be determined").

That said, none of the Amended Complaint's twelve counts—no matter how liberally construed—pleads a viable claim against EY-US.  All of the claims are based on Plaintiff's theory that the defendants intentionally concealed from him information about UBS that was publicly disclosed on government websites, in news articles, and in UBS's own regulatory filings—sources Plaintiff readily found and used to bring this lawsuit.  Moreover, other than claiming that he would not have purchased CEFL if he had known of such information, Plaintiff makes no allegations showing that the alleged non-disclosure, rather than simple market forces,

13

proximately caused the only damages he claims—loss of value of his CEFL investment.  Finally, despite the fact that the majority of Plaintiff's claims sound in fraud and are thus subject to Rule 9(b)'s pleading-with-particularity requirement, Plaintiff offers no particular facts, only generalized accusations and speculation, to support any of his claims.  And he does this in a 976-paragraph amended pleading after being directed to Rule 9(b) in EY-US's motion to dismiss the original complaint.   (*See* EY-US Mem. Supp. Mot. Dismiss [Dkt. 33] at 5.)  We discuss below the individual causes of action brought by Plaintiff.

### 1.   *Plaintiff fails to plead a "securities fraud" claim (Count 4).*

In Count 4, Plaintiff purports to allege a claim for "federal securities fraud."  (Am. Compl. at 168.)  Plaintiff does not specify, in Count 4, the exact securities statute(s) on which this claim is based, but hundreds of paragraphs earlier in the Amended Complaint he cites a litany of securities statutes pursuant to which he purports to bring claims.  (*See* Am. Compl. ¶ 226.)  Of these, only five give rise to a private right of action: Section 10(b)/Rule 10b-5, Section 11 of the 1933 Act, Section 12 of the 1933 Act, Section 9 of the 1934 Act, and Section 13 of the 1934 Act.[7]  Plaintiff fails, however, to plead a viable claim under any of these.

---

[7]   Two of the statutes cited in paragraph 226 of the Amended Complaint require Plaintiff to establish, among other things, separate underlying causes of action, which he has failed to do: *Section 15 of the 1933 Act:* 15 U.S.C. § 77*o* (setting forth when an entity is deemed a "controlling person" for purposes of potential liability under *other* provisions of the 1933 Act; providing no independent cause of action).  *Section 20 of the 1934 Act:* 15 U.S.C. § 78t (setting forth when an entity is deemed a "controlling person" for purposes of potential liability under *other* provisions of the 1934 Act; providing no independent cause of action).

The remaining statutes cited in paragraph 226 either have been found not to give rise to an implied right of action, or they set forth procedural matters that simply could not be independent bases of any liability:  *Section 17(a)(2) of the 1933 Act: Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992) ("[T]here is no private right of action under § 17(a).").  *Section 12 of the 1934 Act: Sheldon v. Vermonty*, No. 99-3202, 2000 WL 1774038, at *5 (10th Cir. Dec. 4, 2000) (holding that plaintiff may not "pursue a private right of action under" Section 12 of the 1934 Act).  *Section 207 of the Investment Advisers Act:  Transam. Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979) (Section 207 "confers no . . . private causes of action,

*Section 10(b)/Rule 10b-5*.  Section 10(b)/Rule 10b-5 gives rise to claims based on certain misrepresentations in, or omissions from, offering documents.  *S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 108 (2d Cir. 2009).  As outlined above, however, the Amended Complaint and the CEFL offering documents show that UBS's auditor made no complained-of misrepresentation or omission.  But even when a misrepresentation or omission is shown, a plaintiff must allege scienter under the "heightened pleading" requirements of the Private Securities Litigation Reform Act.  *E.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (construing 15 U.S.C. § 78u-4(b)(2)).  To do so, the plaintiff must plead "facts giving rise to a strong inference that the [defendant] acted with 'scienter, a mental state embracing intent to deceive, manipulate, or defraud.'"  *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (quoting *Tellabs*, 551 U.S. at 319).  To plead a "strong inference" of scienter, "it is not enough to set out facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent.  The inference of scienter must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* (citations and quotation marks omitted) (quoting *Tellabs*, 551 U.S. at 324; *Cherry St.*, 573 F.3d

---

legal or equitable.").  **Section 34(b) of the Investment Company Act:** *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007) ("[W]e hold that implied private rights of action do not exist under ICA §§ 34(b), 36(a), and 48(a).").  **Section 10 of the 1933 Act:** 15 U.S.C. § 77j (setting forth information to be included in a prospectus; providing no cause of action).  **Section 22 of the 1933 Act:** 15 U.S.C. § 77v (setting forth the jurisdiction of courts and venue for claims under *other* provisions of the 1933 Act; providing no cause of action).  **Section 23 of the 1933 Act:** 15 U.S.C. § 77w (setting forth certain effects of filing a registration statement; providing no cause of action).  **Section 27 of the 1933 Act:** 15 U.S.C. § 77z-1 (setting forth procedural requirements on claims brought under other statutes; providing no cause of action).  **Section 21 of the 1934 Act:** 15 U.S.C. § 78u (setting forth authority of the SEC to investigate and enforce violations of the 1934 Act; providing no private cause of action).  **Section 26 of the 1934 Act:** 15 U.S.C. § 78z (setting forth the effect of regulators' actions; providing no case of action).  **Section 32 of the 1934 Act:** 15 U.S.C. § 78ff (setting forth criminal penalties for willful violations of the 1934 Act; providing no cause of action).  **Section 34 of the 1934 Act:** 15 U.S.C. § 78hh (setting forth the effective date of the 1934 Act; providing no cause of action).

at 110).  "And for an independent auditor, the conduct [alleged] 'must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company.'"  *Id.* (quoting *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000)).  Here, although Plaintiff alleges generally that EY-US "concealed" UBS's "crimes" and "material risk factors" in the CEFL offering documents "knowingly and with deliberate and/or reckless disregard for the truth" (Am. Compl. ¶ 823), Plaintiff has alleged no facts giving rise to a "strong inference" that EY-US had "an actual intent" to participate in a fraud by UBS.  Further, such an inference is neither cogent nor compelling, given that the financial statements in question disclosed the types of things that Plaintiff claims were concealed.

A plaintiff asserting a Section 10(b)/Rule 10b-5 claim also must plead justifiable reliance and loss causation.  *See Harsco Corp. v. Segui*, 91 F.3d 337, 342 (2d Cir. 1996) ("[R]easonable reliance must be proved as an element of a securities fraud claim."); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 588 (S.D.N.Y. 2006) ("Loss causation is an element in Plaintiffs' Section 10(b) claim under the Exchange Act." (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005))).  Plaintiff's Amended Complaint not only ignores these elements but refutes them through its factual allegations.  As for reliance, Plaintiff states that he learned of the alleged misrepresentations from numerous public sources.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 439 (S.D.N.Y. 2001) ("[I]f plaintiff 'has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.'" (alteration in original) (quoting *Mallis v. Bankers Tr. Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980)).  As for loss causation, Plaintiff alleges merely that he never would have bought a security issued by UBS if he had known of

16

UBS's "crimes" (Am. Compl. ¶ 828); he does not allege that those crimes or their alleged concealment caused the value of his shares of the CEFL security to decline.  *See Salomon Smith Barney*, 441 F. Supp. 2d at 589 ("With regard to Plaintiffs' assertion that they would not have purchased the Fund shares had they known of the complained-of practices, this assertion makes out transaction causation—not loss causation.").

   *Section 11 of the 1933 Act*.  Section 11 imposes liability for an "untrue statement of a material fact" in a registration statement or for the omission of "a material fact required to be stated" in a registration statement.  15 U.S.C. § 77k(a).  The liability of an accountant who has "prepared or certified any part of the registration statement" is limited, however, "to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him."  *Id.* § 77k(a)(4); *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n.22 (1983) ("[C]ertain individuals who play a part in preparing the registration statement generally cannot be reached by a Section 11 action.  These include . . . accountants with respect to parts of a registration statement which they are not named as having prepared or certified.").  As discussed above, apart from the 2013 financial statements and accompanying audit report, no portion of the CEFL Prospectus was in any way "prepared or certified" by UBS's auditor.  Plaintiff does not allege any facts suggesting that any portion of those financial statements or audit report contains an "untrue statement" or omission.

   *Section 12 of the 1933 Act.*  Section 12 imposes liability only a person who "offers or sells" a security.  15 U.S.C. § 77*l*(a).  The statute does not apply to the auditors of such a person's financial statements.  *See, e.g.*, *In re Gas Reclamation, Inc. Sec. Litig.*, 659 F. Supp. 493, 508 (S.D.N.Y. 1987) ("[W]hile the banks . . . qualify as 'sellers' for purposes of section 12, the same is not true for [auditor] Peat Marwick, and the section 12 claims must be dismissed as

against it . . . .").  EY-US is alleged only to be an auditor, not the seller of a security.

  ***Section 9 of the 1934 Act.***  Section 9 prohibits various practices aimed at manipulating the price of securities.  *See generally* 15 U.S.C. § 78*i*.  Plaintiff has not alleged any facts showing that EY-US engaged in any price "manipulation."  *See, e.g.*, *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) ("'Manipulation' is virtually a term of art when used in connection with securities markets.  The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." (citation and quotation marks omitted)).

  ***Section 13 of the 1934 Act.***  Section 13 prescribes various filing requirements on the part of issuers of securities, including for example, the filing of annual reports.  *See generally* 15 U.S.C. § 78m.  The only provision of Section 13 from which courts have implied a private right of action, limited to injunctive relief, is subsection (d), which requires certain reporting by an entity that acquires more than five percent of a security.  *See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 617 (2d Cir. 2002).  Plaintiff has not alleged any facts relevant to such a Section 13(d) claim.

  **2.** ***Plaintiff fails to state a claim for "fraudulent inducement to purchase CEFL," "fraudulent concealment," or "common law fraud" (Counts 1, 3, and 6).***

  In Count 1, Plaintiff asserts "fraudulent inducement to purchase CEFL" (Am. Compl. at 161); in Count 3, he asserts "fraudulent concealment" (Am. Compl. at 166); and in Count 6, he asserts "common law fraud" (Am. Compl. at 173).  Despite their different labels, these counts assert the same claim: that EY-US fraudulently concealed UBS's "crimes" from Plaintiff by omitting them from the CEFL offering documents.  (*See* Am. Compl. ¶¶ 820, 843, 878.)[8]

---

[8] To the extent Count 1 purports to assert a securities fraud claim under Section 10(b)/Rule 10b-5, it fails for the reasons Count 4 fails, discussed above.

Plaintiff fails to plead any aspect of any of these claims with particularity against EY-US.  For example, to state a fraudulent concealment claim, a plaintiff must allege, with particularity, that the defendant had a fiduciary relationship with the plaintiff giving rise to a duty to disclose.  *See Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011) (fraudulent concealment requires allegation of "a fiduciary duty"); *see also* Fed. R. Civ. P. 9(b).  Here, Plaintiff has alleged no such relationship between EY-US and himself—let alone particular facts pertaining to one.[9]  Moreover, a plaintiff must also allege, with particularity, "justifiable" or "reasonable" reliance on the alleged misrepresentation or omission.  *Mandarin Trading*, 944 N.E.2d at 1108 (requiring "justifiable reliance"); *see also Stone v. Sutton View Capital, LLC*, No. 17-cv-1574, 2017 WL 6311692, at *3 (S.D.N.Y. Dec. 8, 2017) ("Reasonable reliance, as an essential element of the claim, must also be pled with particularity." (citing *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005))).  The Amended Complaint forecloses any possibility of "justifiable" reliance on the CEFL offering documents' non-disclosure of "crimes" when it alleges that those "crimes" and "material risk factors" are disclosed in public sources (*see* Am. Compl. ¶¶ 234, 349, 680 & Exs. A-B, E, G-T).  *See, e.g.*, *Kurtz v. Foy*, 884 N.Y.S.2d 498, 501 (App. Div. 2009) ("Justifiable reliance does not exist where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means." (quotation marks and citation omitted)).

### 3.   *Plaintiff fails to state a claim for "aiding and abetting securities fraud" or for a "civil conspiracy to commit fraud" (Counts 2 and 5).*

In Count 2, Plaintiff asserts a claim of "aiding and abetting securities fraud" (Am. Compl. at 164), and in Count 5, he asserts a claim of "civil conspiracy to commit fraud" (Am. Compl. at

---

[9]   Plaintiff does assert a separate claim for "breach of fiduciary duty" (Count 6), which, as discussed in full below, fails because Plaintiff alleges no facts suggesting such a duty and, in any event, accountants do not, as a matter of law, owe fiduciary duties to non-clients.

169).  To assert either of these forms of vicarious liability, a plaintiff must adequately allege an underlying fraud.  *See Williams v. Williams*, 53 N.Y.S.3d 152, 153 (App. Div. 2017) ("[A] cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort."  (citing *Blanco v. Polanco*, 986 N.Y.S.2d 151, 155 (App. Div. 2014)); *McBride v. KPMG Int'l*, 24 N.Y.S.3d 257, 260 (App. Div. 2016) ("Without an underlying fraudulent inducement claim, [plaintiff's] claim that [defendants] aided and abetted fraudulent inducement necessarily fails." (citing *Kleinerman v. 245 E. 87 Tenants Corp.*, 903 N.Y.S.2d 356, 358 (App. Div. 2010)).  For all the reasons discussed here and in UBS's motion papers, the Amended Complaint fails to state any claim for fraud.

Moreover, Plaintiff's conspiracy claim fails because, although he asserts generally that EY-US "conspired with UBS to conceal the 26 material facts" (Am. Compl. ¶ 867), he does not allege any facts showing "an agreement" between EY-US and UBS to do so or "an overt action" to further such an agreement.  *See Blanco*, 986 N.Y.S.2d at 155 (to plead a conspiracy claim, "plaintiff must allege "a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement"; a "bare conclusory allegation of conspiracy is usually held insufficient" (quoting *Faulkner v. City of Yonkers*, 963 N.Y.S.2d 340, 341 (App. Div. 2013))).  To the extent Plaintiff's "aiding and abetting" claim is directed toward an underlying incident of federal securities fraud, such a claim does not exist.  *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008) ("The § 10(b) implied private right of action does not extend to aiders and abettors."); *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012) ("Section 20(e) of the Securities Exchange Act of 1934 allows the SEC, *but not private litigants*, to bring civil actions against aiders and abettors of securities fraud." (emphasis added)).

4.      ***Plaintiff fails to state a claim for "negligence" or "negligent concealment" (Counts 7 and 8).***

In Counts 7 and 8, Plaintiff asserts, under a single heading, "negligence and negligent concealment." (Am. Compl. at 178.)  Despite being denominated as two counts, one claim is alleged: that EY-US negligently concealed, or failed to disclose, UBS's "crimes" and "material risk factors." (*See* Am. Compl. ¶¶ 896, 901.)  Under New York law, upon which Plaintiff specifically asserts this claim (*see* Am. Compl. ¶¶ 894-897), for accountants to be liable to a non-client for negligence, "there must have been," among other things, "some conduct on the part of the accountants linking them to [the non-client], which evinces the accountants' understanding of [the non-client's] reliance." *Credit All. Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 118 (N.Y. 1985) (citing *Ultramares Corp. v. Touche*, 174 N.E. 441 (N.Y. 1931)).  Plaintiff alleges no such "linking" conduct between EY-US and himself.[10]  *See id.*; *see also Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 75 (2d Cir. 2000) ("To demonstrate linking conduct, a plaintiff generally must show some form of direct contact between the accountant and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other 'substantive communication' between the parties.").

Moreover, like a claim for fraudulent concealment, discussed above, a claim for negligent concealment or misrepresentation requires a showing of, among other things, two elements Plaintiff failed to plead: a "privity-like relationship" and "reasonable reliance" on the misrepresentation or omission.  *See J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007) (negligent misrepresentation requires allegation of "the existence of a special or

---

[10]     Plaintiff asserts that, in *Credit Alliance*, the New York Court of Appeals "held that a party without privity, as here, [i.e., a non-client] can recover from auditors provided the party is within a limited class of foreseen users." (Am. Compl. ¶ 897.)  In fact, *Credit Alliance* expressly *rejects* that argument.  483 N.E.2d at 119 n.11 ("declin[ing] to adopt" a rule of auditor liability based solely on "foreseeability")

privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff" and of "reasonable reliance on the information").  Here, Plaintiff has alleged neither a "privity-like relationship" with EY-US nor "reasonable" reliance on EY-US's alleged omission.  As noted above, the Amended Complaint forecloses any possibility of "reasonable" reliance on the CEFL offering documents' non-disclosure of the "crimes" and "material risk factors" because it alleges that Plaintiff successfully discovered that purported misconduct from public sources.  *See, e.g.*, *Kurtz v. Foy*, 884 N.Y.S.2d 498, 501 (App. Div. 2009) ("Justifiable reliance does not exist where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means." (quotation marks and citation omitted)).

### 5. *No cause of action exists against EY-US for breach of fiduciary duty (Count 9).*

In Count 9, Plaintiff asserts a claim for breach of fiduciary duty.  (Am. Compl. at 181.)  Plaintiff, however, pleads no facts showing that EY-US owed him a fiduciary duty.  Nor could he.  Accountants, as a matter of law, do not owe fiduciary duties to non-client third parties.  *See, e.g.*, *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 642-43 (2d Cir. 2012) (third party's receipt of audit report does not give rise to fiduciary relationship between auditor and third party); *Tal v. Superior Vending, LLC*, 799 N.Y.S.2d 532, 533 (App. Div. 2005) (no fiduciary duty where plaintiff was not a client of the accounting firm).[11]

---

[11]    In Count 9, Plaintiff inexplicably cites, in addition to New York law, Delaware law.  (*See* Am. Compl. ¶¶ 908, 911.)  To the extent Plaintiff asserts the claim under Delaware law (and the application of that law is proper), the claim still fails.  *See, e.g.*, *Stewart v. Wilmington Tr. SP Servs.*, 112 A.3d 271, 297-98 (Del. Ch. 2015) (holding that auditors do not owe fiduciary duties, requiring an exercise of control, even to their own clients), *aff'd*, 126 A.3d 1115 (Del. 2015).

**6.      *Plaintiff fails to plead a claim for "aiding and abetting breaches of fiduciary duties" (Count 10).***

In Count 10, Plaintiff asserts "aiding and abetting breaches of fiduciary duties."  (Am. Compl. at 187.)  To plead this claim, Plaintiff must allege, among other things: "a breach by a fiduciary of obligations to another" and "that the defendant knowingly induced or participated in the breach."  *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. 2003).  Plaintiff does not sufficiently allege either.  Although Plaintiff baldly states that UBS owed him a fiduciary duty (Am. Compl. ¶ 936), he pleads no facts showing that this is so.  Indeed, Plaintiff does not allege that he ever had any direct dealings with UBS (which he alleges issued the security he purchased through transactions with Schwab), let alone that he was a client of UBS or otherwise had any relationship with UBS imposing a fiduciary duty.  *See, e.g.*, *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) (describing the types of relationships giving rise to fiduciary duties).  Moreover, Plaintiff alleges no facts showing that EY-US "knowingly induced or participated" in a breach of UBS's purported duty.  *See Kaufman*, 760 N.Y.S.2d at 169 ("A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator.")

**7.      *No cause of action exists against an auditor for "failure to supervise" (Count 11).***

In Count 11, Plaintiff purports to allege a "failure to supervise" in violation of Sections 15(b)(4)(E) and (b)(6) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b)(4)(E), (b)(6). (Am. Compl. at 189.)  Although purportedly asserted against "all defendants," the allegations in this Count appear to be directed primarily at Schwab.  In one paragraph, however, Plaintiff states: "EY Global and the rest of the EY named entities also failed to supervise their

employees."[12]   (Am. Compl. ¶ 948.)   To the extent the "failure to supervise" claim is asserted against EY-US, it fails because the cited provisions only apply to brokers, dealers, or persons associated with a broker or dealer—not to auditors.   Moreover, the statute does not give rise to a private right of action.   *See, e.g.*, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) ("[W]e affirm the district court's order granting summary judgment to Titan on appellants' claims under § 15 of the 1934 Act, 15 U.S.C. § 78*o*, because this section does not give rise to a private right of action.").

### 8.   *Plaintiff fails to plead unjust enrichment against EY-US (Count 12).*

In Count 12, Plaintiff asserts a claim for unjust enrichment, but he limits his allegations solely to the "UBS Defendants."   (Am. Compl. at 191.)   Count 12 is not pleaded against EY-US and contains no allegations pertaining to EY-US.

### 9.   *Plaintiff has not demonstrated an entitlement to any relief or to punitive damages.*

In a separate section of the Amended Complaint, Plaintiff seeks a "declaratory judgment" and "injunctive relief."   (Am. Compl. at 193.)   And in the "prayer for relief," Plaintiff seeks both "actual economic and lost opportunity damages" and "punitive damages of $100,000,000."   (*Id.* ¶ 976.)   For the reasons outlined above, Plaintiff has failed to state any claim against EY-US, and he is therefore not entitled to any relief, including compensatory damages, punitive damages, a declaratory judgment, or injunctive relief.

---

[12]      The Amended Complaint is devoid of any particularized allegations of conduct, let alone misconduct, by any Ernst & Young-related entities or persons—several of whom are purportedly named as defendants (Am. Compl. ¶¶ 24-28), but none of whom has been served with process. Absent allegations of any wrongdoing by these individuals, allowing them to be served, or otherwise allowing this action to proceed as to them, would be futile.   *See Drobner*, 531 F. App'x at 98.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should dismiss all of Plaintiff's claims against EY-US.  Because the Court already has stated that "Plaintiff will not be given any further opportunity to amend" (Oct. 26, 2017 Order [Dkt. 35] at 1), the dismissal should be with prejudice.  Moreover, because the deficiencies in Plaintiffs' Amended Complaint apply equally to the unserved Ernst & Young defendants, the Court should dismiss the entire action as to all such defendants.

Dated:  January 31, 2018                                   Respectfully submitted,

/s/ Richard T. Marooney
Richard T. Marooney
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Phone:  (212) 556-2242
Fax: (212) 556-2200
Email: rmarooney@kslaw.com
*Counsel for Defendant Ernst & Young LLP*
