IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

Civil Action No:  1:17-CV-04503-JMF

| | |
|---|---|
| Robert Zimmerman, | ) |
|           Plaintiff, | ) |
| | ) |
|    v. | ) |
| | ) |
| UBS AG, | ) |
| UBS GROUP AG, | ) |
| UBS Securities, LLC, | ) |
| UBS Financial Services, Inc., | ) |
| UBS Americas Holding LLC, | ) |
| Charles Schwab & Co., Inc., | ) |
| EY Global LLP, | ) |
| Ernst & Young LLP and Ltd., and | ) |
| Individual Defendants. | ) |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 26 18

# **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS**

i

# TABLE OF CONTENTS

Table of Contents...............................................................................................ii-iv

Table of Authorities..........................................................................................v-ix

Statutes...............................................................................................................ix

Rules...................................................................................................................ix

Other Authorities................................................................................................x

Introductory Comments......................................................................................1

Opening Statement .............................................................................................1

Schwab's Breach of the Confidential Settlement Agreement.............................1

FINRA is a Sham Financial Regulatory Agency.................................................1

Plaintiff's Numerous Well-Documented Allegations and Undisputed Facts.....2-3

UBS's Exchange Traded Note (ETN) Terrorist Scheme to Defraud Investors.............1-4, 33, 40

UBS's Undisclosed Material Risk Factors...................................1-2, 11-12, 15, 21, 24-39

Defendants Do Not Deny the Material Risk Factors Should Have Been Disclosed............13-14

UBS Underwriter and Issuer Liability...........................................2-3, 25-28, 33, 37, 39

Summary Recital of the Undisputed and Disputed Facts ...........................................10

UBS Brags It is Beyond the Reach of U.S. Securities Laws...................................3-5, 13

Major Broker-Dealers Will Not Trade UBS Securities....................................11-12, 34-35

UBS, Madoff and Capone Cut from Whole Cloth.............................................28-40

UBS Employees Call UBS Securities Crap and Vomit........................................25

UBS/DOJ Criminal Prosecution Waivers.........................................................3

UBS/DOJ Cease and Desist Orders..................................................................3

UBS Has Confessed to Serious Financial Crimes Such as LIBOR Manipulation, Facilitating Income Tax Evasion, Mail Fraud and Rigging Foreign Exchange and Commodities Markets……………………………………...…..1-4, 10-17, 24-25, 35, 38, 40

UBS Received and Violated Criminal Non-Prosecution Agreements……………...………...……..24

UBS's Admissions-Against-Interest and Consciousness of Guilt ……………2, 10,18, 21, 25,  29

UBS's Four-Year Term of DOJ Administered Criminal Probation………………..…..2, 13, 24, 38

UBS Under Threat for Loss of Securities Business License………………………2, 13-14, 24, 39

UBS Continues to be Investigated for Criminal Activity……………….…......…………….2, 39

UBS's Attorney's Letters Begging for Leniency for UBS……………………………………24

UBS Confesses to Conflicts of Interest………………………………………………,3, 36

EY's Contribution to the UBS ETN Terroristic Financial Fraud Scheme…..1-4, 11-12, 25, 29-40

EY's Undeserved Unqualified Audit Opinion Letters………………….…..2., 11-12, 25, 29-36

EY Entity Interconnectedness…………………………………………………….3, 33-35

Defendants Obsequious Devotion to Their Bogus Allegations…………………….…............2-39

Defendant's Bogus Allegation that Plaintiff's Allegations are Conclusory...………....…………31

UBS's Non-Disclosed Crimes, If Disclosed, Would Deter Investors….2, 11-17, 24-25, 33, 36-37

Defects in the Offering Document for CEFL………………….…..2, 10-13, 16, 21, 25, 27, 35-38

Summary Recital of Plaintiff's Argument……………………………………………….11

Full Disclosure is U.S. Supreme Court Black Letter Law……………….…..11-17, 25, 33, 36-37

Standard of Review………………………………………………….…..………….6

Pleading Standards Under Rule 8(a)…………………...……….…..……………..……23-24

Pleading Standards Under 9(b) and the PSLRA…………...……….…….……6-9, 12-14, 26-27, 34

Pleading Standards Under Rules 10(b) and 10b-5…………………...…....9-12, 16, 21-23, 26-27

Pleading Standards Under Sections 11 and 12(a)(2)……………………………………….25-28

Pleading Standards Under Rule 12(b)(6)………………………………..………..6-12, 19

Pleading Standards Re: Plausibility and Particularity…………..……………..….…4-22, 34-38

Pleading Standards Re: Omission of Material Facts ………………….1-2, 10-17, 21-28, 32-39

Pleading Standards Under Rule 4(k)(2) Long-Arm Statute………………..…………….…..……5

Plaintiff's Pleadings……………………………………..……………………………17-40

Plaintiff's Claims and Allegations are Infused with Plausibility and Particularity…………..…17-38

Plaintiff Has Adequately Pled Willful, Deceitful & Reckless Intent to Defraud…...2, 8, 17-27, 39

Plaintiff Has Adequately Pled Securities Fraud………………………………...…………..25-40

Plaintiff Has Adequately Pled Fraudulent Inducement…………………………………..….25-40

Plaintiff Has Adequately Pled Fraudulent Concealment………………………………....25-40

Plaintiff Has Adequately Pled UBS Manipulation of CEFL Share Price………...……………..35

Plaintiff Has Adequately Pled Fiduciary Relationships………………………….……………32

Plaintiff Has Adequately Pled Unjust Enrichment…………………………………………….32

Plaintiff Has Adequately Pled Civil Conspiracy……………………………………...………32

Plaintiff Has Adequately Pled Aiding and Abetting…………………………………..………31


Plaintiff Has Adequately Pled Common Law Fraud………………………..……..……….25-40

Plaintiff Has Adequately Pled Negligence and Negligent Concealment…………………….25-27

Plaintiff Has Adequately Pled Scienter ……………………………………….7-12, 15, 17-22, 27, 38

Plaintiff Has Adequately Pled Superior Knowledge…………………………………..…25-27

Plaintiff Has Adequately Pled Loss Causation ……………………………………………34-35

Plaintiff Has Adequately Pled Reliance…………………………....……………….29, 33-34

Plaintiff Has Adequately Pled Privity………………………………………………………35-36

Plaintiff Has Adequately Pled Control Person Liability…………………………………….22-24

Plaintiff Has Adequately Pled Requisite Contacts…………………………………...………31-32

Plaintiff Has Adequately Pled Violations of Sections 11and 12(a)(2)

    of the Securities Act…………………………………………...………………………38-37

Plaintiff has adequately pled liability Under Section 11…………………...……………30, 37-38

Plaintiff Has Adequately alleged Section 12(a)(2)……………………………....……………38-39

Defendants Materiality Challenges are Premature ........................................................................12

Defendants Have been Fully Informed of the Charges Against Them………………………..40

Conclusion .....................................................................................................................................40

## Table of Authorities

*Affiliated Ute Citizens v. United States,* 406 U.S. 128 (1972)……………………………………...15

*Ahern v. Gausssoin* 611 F. Supp.1465………………………………………………………..33

*Alexander v. Evans,* No. 88 Civ. 5309 1993 WL 427409, (S.D.N.Y.1993)……………...…......33

*Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999)……………………....9

Andrew E. Roth, Derivatively on Behalf of Metal Management, Inc. v.
    T. Benjamin Jennings, European Metal Recycling, Ltd.
    and Metal Management, Inc.489 F.3d 499 (2d Cir. 2007)………………………………...10

*Anwar v. Fairfield Greenwich Ltd.,* 728 F. Supp. 2d 407…………………………………….39

Ashcroft v. *Iqbal,* 556 U.S. 662 (2009)………………………………………….6-8, 13-15, 19-20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir.2007)…………………………10

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120 (2nd Circ. 2002)……...31

*Bare Escentuals,* 745 F. Supp. 2d 1083……………………………………………………….40

*Basic v. Levinson,* 485 U.S. 224.................................................................27

*Bauman v. Daimler Chrysler Corp.,* 644 F.3d 909 (9th Cir. 2001).................................34

*Bell Atlantic Corp v. Twombly,* 550 U.S. 540 (2007)..................................6-8, 12, 19-20

*Boguslavsky v. Kaplan,* 159 F.3d 715 (2d Cir.1998).............................................22-23

*Boykin v. KeyCorp,* 521 F.3d 202 (2d Cir.2008)......................................................8-19

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)............................................32, 34

*Cetnar v Kinowski,* 263 A.D.2d 842.................................................................17

*Chasins v. Smith, Barney & Co.,* 438 F.2d 117.....................................................33

*Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158.......................................32

*Conley v. Gibson,* 335 U.S. 41 (1957)................................................................ 6

*Credit Suisse First Boston Corp. v. ARM Financial Group, Inc.*
    No. 99 Civ. 12046, 2001 WL 300733 (S.D.N.Y. Mar. 28, 2001)...............................28

*Daou Systems Inc v. V W,* 411 F.3d 1006.............................................................22

*De La Cruz v. Tormey,* 582 F.2d 45 (9th Cir. 1978)............................................9, 20

*DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d Cir. 2010).............................6

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir.2009)....................................................................39

*Elastic Wonder, Inc. v. Posey,* Case No. 13 CV. 5603 (JGK),
    2015 WL 273691, at *1 (S.D.N.Y. Jan. 22, 2015)...............................................6

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*
    343 F.3d 189 (2d Cir.2003)....................................................................34

*Eminence Capital L.L.C. V. Aspeon, Inc*
    316 F.3d 1048 (9th Cir. 2003).................................................................40

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185 (1976).............................................37-39

*Fait v. Regions Financial Corp.,* 655 F.3d 105....................................................16

*Freudenberg v. E*Trade Financial Corp.,* 712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................6

*Gibson v. United States,* 781 F.2d 1334 (9thCir. 1986)..........................................12

*Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F. Supp. 256 (S.D.N.Y. 1989)............39

*Higgins v. New York Stock Exch., Inc.,*
    10 Misc. 3d 290; 806 N.Y.S.2d 339 (Sup. Ct. N.Y. Co. 2005)...............................31

*In re Alstom SA,* 406 F.Supp.2d 433 (S.D.N.Y. 2005).................................................21

*In re Am. Int'l Grp., Inc.* 2008 Sec. Litig., 741 F.Supp.2d 511 (S.D.N.Y.2010)...............15

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.* 381 F.Supp.2d 192 (S.D.N.Y.2004)........23

*In re Bayer AG Sec. Litig,* No. 03 Civ. 1546, (S.D.N.Y. Sept. 30, 2004).........................21

*In re BISYS Sec. Litig.,* 397 F.Supp.2d 430 (S.D.N.Y.2005).........................................28

*In re Citigroup Inc. Sec. Litig.,* 753 F.Supp.2d 206 (S.D.N.Y.2010)..............................34

*In re Constar Int'l, Inc. Sec. Litig.,* 585 F.3d 774 (3d Cir. 2009)..................................33

*In re Diasonics Sec. Litig.,* 599 F. Supp. 447 (N.D. Cal. 1984)...............,,,,,,,,................33

*In Re Flag Telecom Holdings Ltd. Sec. Litig.* 618 F. Supp. 2d 311 (S.D.N.Y)....................39

*In re Global Crossing, Ltd. Sec. Litig.* 322 F.Supp.2d 319 (S.D.N.Y.2004).......................30

*In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d 281 (S.D.N.Y. 2003)....................7

*In re International Business Machines Corporate Sec. Litig.,*163 F.3d 102 (2d Cir.1998)........27

*In re Moody's Sec. Litig.,* 599 F.Supp.2d 493 (S.D.N.Y.2009)......................................23

*In re New Century,* 588 F.Supp.2d 1206 (C.D.Cal.2008)..............................................21

*In re Nortel Networks Corp. Sec. Litig.,* 238 F.Supp.2d 613  (S.D.N.Y.2003)....................22

*In re Optionable Sec. Litig.,* 577 F.Supp.2d at 692..................................................27

*In re Oxford Health Plans, Inc.,* 187 F.R.D. 133 (S.D.N.Y.1999)..................................28

*In re Refco, Inc. Sec. Litig.,* 503 F.Supp.2d 611  (S.D.N.Y. 2007).................................26

*In re Scholastic Corp.,* 252 F.3d 63  (2d Cir.2001)....................................................9

*In re Take-Two Interactive Sec. Litig.* 551 F.Supp.2d 247 (S.D.N.Y.2008).......................23

*In re Unicapital Corp. Sec. Litig.,* 149 F.Supp.2d 1353 (S.D.Fla.2001).......................37-38

*In re WorldCom, Inc. Sec. Litig.,* 352 F.Supp.2d 472  (S.D.N.Y.2005).............................30

*Johnson v. Aegon USA, Inc.*, 355 F. Supp. 2d 1343……………………………………………38

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir.2001)…………………………………………...18

*Kleinman v. Elan Corp.*, 706 F.3d 145 (2d Cir.2013)…………………………………...16

*Kurtz v. Foy*, 884 N.Y.S. 2d 498……………………………………………………...17

*Lawrence v. Cohn*, 325 F.3d 141 (2d Cir.2003)………………………………………10

*Leykin v. AT & T Corp.* 423 F.Supp.2d 229 (S.D.N.Y.2006)……………………………35

*Marsh & Mclennan Cos. Sec. Litig.*, 501 F.Supp.2d 452  (2d Cir.2006)…………………27

*Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011)……………………………8, 19

*Metro-Goldwyn-Meyer Studios, Inc. v. Grokster*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003)……….5

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970)………………………………………33

*Milman v. Box Hill Sys. Corp.*, 72 F.Supp.2d 220 (S.D.N.Y. 1999)……………………37

*Nathel v. Siegal*, 592 F.Supp.2d 452 (S.D.N.Y.2008)……………………………………35

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir.2000)……………………………………20-21

*Palkovic v. Johnson*, 281 Fed. Appx. 63 (2d Cir. 2008)……………………………...16

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.* 538 F.Supp.2d 662 (S.D.N.Y.2008)….…….15

*Police and Fire Retirement System of the City of Detroit v. SafeNet, Inc.*

    645 F.Supp.2d 210 (S.D.N.Y.2009)……………………………………………22

*Retail Software Servs. Inc., v. Lashlee*, 854 F.2d 18 (2nd Circ. 1988)…………..……………32

*Robert & Co. Assocs. v. Rhodes-Haverty P'ship*, 250 Ga. 680; 300 S.E.2d 503 (1983)………..36

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984)…………………9, 20

*Rombach v. Chang*, 355 F.3d 164 (2d Cir.2004)……………………………………26-28, 33, 38

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir.2001)………………………………………21

*Ross v. A.H. Robins Co.*,607 F.2d 545 (2d Cir.1979)…………………………………...16

*Ross v. Bank of America, N.A (USA)*, 524 F.3d 217 (2d Cir. 2008)……………………9, 20

*Rutsky & Co. Ins. Servs, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003)…………34

*Santa Fe Industries Inc., v. Green*, 430 U.S. 406……………………………………15

*Scheuer v. Rhodes,* 416 U.S. 232 (1974)……………………………………… ……9, 20

*Schneider v. California Dep't of Corrections,* 151 F.3d 1194 (9th Cir.1998)……………..9, 20

*Schwarzenegger v. Martin Motor Co.,* 374 F.3d 797… … … … … … … … … … … … …34

*SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 1 (1972)…………………………..15

*SEC v. Electronics Warehouse, Inc.,* 689 F. Supp. 53 (D. Conn. 1988)…………………….39

*SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450 (2d Cir. 1996)…………………………………22

*SEC v. Ralston Purina Co.,* 346 U.S. 119 (1953)……………………………….……………37

*SEC v. Wyly*, 788 F. Supp. 2d 92, 101 (S.D.N.Y. 2011)……………………………………….6

*Sgalambo v. McKenzie*, 739 F.Supp.2d 453 (S.D.N.Y. 2010)…………………….…………23

*Smallwood v. Pearl Brewing Co.,* 489 F.2d 579 (5th Cir.)……………………………………39

*Spielman v. General Host Corp.,* 538 F.2d 39, 40 n. 2 (2d Cir. 1976)………………………..39

*Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir.1999)………………………………… 9

*Take-Two Interactive Sec. Litig.,* 551 F.Supp.2d 307……………………………..………..23

*Tellabs, Inc. v. Makor Issues and Rights, Ltd,* 551 U.S. 308 (2007)……………………...7-8, 18

*Terra Securities,* 740 F. Supp. 2d 451…………………………………………...……………33

*Turkmen v. Ashcroft,* 589 F.3d 542 (2d Cir.2009)……………………………………..9, 20

*United States v. City of Redwood City,* 640 F.2d 963 (9th Cir. 1981)………………………..9, 20

*United States v. Swiss Am. Bank, Ltd.,* 116 F. Supp. 2d 217 (D. Mass. 2000)……………………5

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013)………………………………………………6

*Werner v. Werner,* 267 F.3d 288 (3d Cir. Pa. 2001) ………………………………….…......17,39

*Westinghouse Elec. Corp. v. '21' Int'l Holdings, Inc.,*

    821 F. Supp. 212 (S.D.N.Y. 1993)……………………………………………...………33

*Wiwa v. Royal Dutch Petroleum Co.,* 226 3d 88…………………...………...……………….31

*Yung v. Lee,* 432 F.3d 142  (2d Cir.2005)……………………………………… ….………… 38

## Statutes

15 U.S.C. § 77k…………………………………………………………………………25

15 U.S.C. § 77k(a)……………………………………………………………...16, 37

15 U.S.C. § 77k(b)……………………………………………………………………38

15 U.S.C. § 77l (a)(2)…………………………………………………………………26

15 U.S.C. § 77o…………………………………………………………………….…26

15 U.S.C. § 78u-4(b)(2)…………………………………………………………….9, 18

15 U.S.C. § 78u-4(b)(4)………………………………………………………………34

17 C.F.R. § 229.303(a)(3)(ii)…………………………………………………………39

## Rules

Fed. R. Civ. P. 4(k)(2)………………………………………………………….....5

Fed. R. Civ. P.8…………………………………………………....................…34-35

Fed. R. Civ. P. 8(a)…………………………………………………...…………23-24

Fed. R. Civ. P. 9(b)……………………………………………………...…7-9, 27, 34

Fed. R. Civ. P. 12(b)(6)…………………………………………………...…5-12, 19

Fed. R. Civ. P. 12(e)…………………………………………………………………7

Fed. R. Civ. P. 15(a)………………………………………………………………..40

## Other Authorities

Black Letter Law…………………………………………………………......…11, 14, 33

Buried Facts Doctrine………………………………………………….…………..11-13, 17, 24

Exchange Act………………………………………………………….…………10, 16, 23-24

Securities Act………………………………………………………….……………11-12-16, 36-38

Generally Accepted Accounting Principles (GAAP) and Standards (GAAS)…………………30
.

H.R.Rep. No. 85, 73d Cong., 1st Sess., 1-5 (1933)………………………………………37

Items 103 and 303 of SEC Regulation S-K……………………………………………39

*Res Judicata*………………………………………………………………………………..30

Restatement of the Law, Second, Torts, § 552…………………………………………………..36

Private Securities Legislative Reform Act "PSLRA"…………………..…………..7-9, 12-19, 34-36

## INTRODUCTORY COMMENTS

Plaintiff, Robert Zimmerman, respectfully submits this Opposition to Defendant's Motions to Dismiss ("MTDs") the First Amended Complaint ("FAC"). Plaintiff's numerous incriminating documents and fact-laden FAC demonstrate the incontrovertibly of Plaintiff's allegations and Plaintiff's entitlement to relief. ● Moreover, discovery will reveal a mountain of new forensic evidence in support of Plaintiff's already viable claims. For these and the reasons below, Plaintiff requests that this Court deny the entirety of Defendant's MTDs with prejudice. ● Also, with regard to Schwab Defendants, as Plaintiff has previously pled, Schwab breached its boilerplate Confidentiality Settlement Agreement ('CSA") by disclosing it to its newly hired attorneys who, in turn, disclosed it to this Court and others. ● Further, the CSA failed to cite the specifics of what claims Plaintiff is alleged to have waived, which, along with Plaintiff's prior pleadings on this matter, form a sufficient basis for voiding the CSA and mandatory arbitration. ● Moreover, FINRA is a sham regulatory agency that functions primarily as a trade association for the securities industry, refuses to publish its ruling statistics and has by its failure to revoke UBS's business license has shamefully encouraged future UBS financial criminality and untoward collusion with Schwab and other broker-dealers.

## OPENING STATEMENT

The supreme role of our government is the protection of our citizens from all forms of hostilities, foreign and domestic, including, as here, financial terrorism. Plaintiff's growing mountain of document and expert witness evidence at trial will assure a positive jury verdict for Plaintiff. So far, Plaintiff has not only pled cogent, compelling undisputed facts and allegations, but has also submitted an extensive array of undisputed incriminating documents that support his

every allegation and portray Defendants engaged in an elaborate financial scheme to intentionally conceal serious financial crimes and many other material risk factors from the UBS AG offering document for CEFL and therefore from Plaintiff with conscious, deceitful and shameful recklessness that was instrumental in inducing Plaintiff to invest in the defective security called CEFL, which investment led to his loss of a large chunk of his retirement savings. After confessing to the commission of so many serious financial crimes it is grotesque that UBS is still allowed to run rampant in the U.S. fleecing investors like me. ● Defendants cite not a single authority to support any of their hapless allegations and arguments, and have failed to address any of Plaintiff's numerous well-documented allegations and undisputed facts, such as: (1) UBS's serious financial crimes, including LIBOR (the largest financial scam in history), aggressively facilitating 52,000+ U.S. tax evaders, extensive money laundering and the rigging foreign exchange and commodity metals markets; (2) that Defendants were aware of the non-disclosure of the material risk factors; (3) that CEFL is a defective security; (4) that EY, a kindred spirit with UBS in the tax evasion business, did not insist on UBS disclosing certain seriously material risk factors in the offering document for CEFL; (5) that UBS committed all of the serious crimes set out in the FAC and many others as yet undetected and possibly involving political and drug cartel money laundering; (6) that UBS was serving a four-year term of criminal probation and was and is under investigation by authorities foreign and domestic and under threat of loss of license to conduct a securities business in the U.S. at the time it issued and underwrote CEFL; (7) that EY was paid over a billion in fees for a series of undeserved unqulified audit opinions from 2004 through 2017; (8) that UBS was under threat of loss of its status as an eligible issuer when it issued and underwrote CEFL; (9) that UBS was engaged in an elaborate scheme to defraud investors by issuing and underwriting numerous defective exchange

2

traded notes (" ETNs") including CEFL; (10) that EY should have resigned instead of issuing UBS undeserved unqualified audit opinions; (11) that if EY had not issued UBS undeserved unqualified audit opinions, UBS could not have issued and underwrote CEFL and Plaintiff would not have been defrauded; (12) that UBS and EY reaped enormous profits from UBS's financial crimes; (13) that no reasonable investor would purchase CEFL shares if first informed of UBS's serious financial crimes in the offering document for CEFL; (14) that UBS intentionally engaged in activities that conflicted with the interests of CEFL shareholders; (15) that the UBS appointed Calculation Agent and Index Sponsor for CEFL, with the approval of UBS executives, undertook activities adverse to the shareholders of CEFL; (16) that UBS intentionally advertised a high interest rate of return for CEFL to lure elderly investors to purchase CEFL shares; (17) that UBS plea-bargained waivers of criminal prosecution from the DOJ and received cease and desist orders from the SEC; (18) that UBS possesses the skills, resources, motive and opportunity to manipulate CEFL for their own financial benefit and to the detriment of Plaintiff; (19) that UBS has bragged that they have committed numerous serious financial crimes and will likely commit more crimes; (20) that UBS has bragged that it is beyond the reach of U.S. law courts; (21) that UBS created its ETNs to reap tens of billions in profits at the expense of unsuspecting, mostly elderly investors; (22) that the purchase of a UBS ETN = a loan to UBS they have no intent to repay; (23) that the UBS-created ETN's were designed to induce elderly and other investors with the promise of high dividends when near interest rates prevail; and (24) that UBS is seriously infected with a cult of financial criminality.

- The UBS/EY Scheme to Defraud Investors: With the issuance of numerous ETNs, including CEFL, UBS, and its hired gun EY, launched a devious scheme of financial terrorism to defraud elderly and other investors, including Plaintiff. Defendants have engaged in an

inexplicable dance choreographed by high-profile law firms and lobbyists to compromise the SEC and the DOJ, thus degrading the rule of law and corrupting our democracy. In its MTD EY audaciously claims "EY-Global" is merely a "brand name," a characterization possibly borrowed from a certain U.S. President and not the horizontally and vertically interconnected consortium of partnerships that shares resources and consolidates their revenue as such suits their purposes.

• The UBS ETN scheme is arguably UBS's most lucrative financial crime. Left unchecked, it will contribute billions of dollars to UBS entities and its Individual Defendants, all of whom hold a considerable quantity of UBS shares and stock options and EY's partners who charge UBS exorbitant fees for aiding and abetting UBS's fraudulent ETN scheme, FAC ¶¶ 14-24. With the filing of this Opposition and FAC, unlike Defendant's bogus allegations to the contrary, Plaintiff believes he has exceeded the applicable standards of plausibility and particularity and has established numerous genuine issues for a jury to decide by setting out non-conclusory, and mostly undisputed, well-documented facts and allegations to support every element of his twelve claims for relief. Plaintiff's claims more than meet the plausibility standard when the inferences that must be drawn from the mostly undisputed facts and allegations and disputed facts and allegations are assessed in a light favorable to Plaintiff. For example, how could it not be plausible that UBS, an investment bank with an incontrovertible, vast history of the most serious financial crimes ever recorded, did not conduct the fraudulent misconduct and other torts alleged and documented in Plaintiff's FAC? In fact, Plaintiff's FAC is so utterly plausible that Defendants had only the amplified fictional narratives they deployed in their MTDs in their joint effort to confuse the serious issues raised by Plaintiff. In their MTDs Defendants maintain that various named parties are not served and not represented by counsel even though these named Defendants are represented by counsel as seen in UBS's MTD at pages 1 and 25, where UBS has

moved to dismiss Plaintiff's claims against UBS's Individual Defendants by name. To date, representation has not been withdrawn for any of the UBS or EY Individual Defendants.

● UBS Brags It is Beyond the Reach of U.S. Law: Astonishingly, on page 6 of UBS AG's shelf registration statement for CEFL, under the heading "Limitations on Enforcement of U. S. Laws Against Its Management and Others," UBS AG brazenly brags that "most of its directors and executive officers are resident outside the U.S., and all or a substantial portion of their assets are located outside the U.S., thus making it difficult to serve legal process on them, and there is doubt as to the enforceability in Switzerland, in original actions or in actions for enforcement of judgments of U.S. courts, of liabilities based solely on the securities laws of the U.S." The above declaration by UBS demonstrates a degree of hubris typically reserved for senior members of criminal organizations. Also, UBS Individual Defendant Robert McCann was timely served. See Plaintiff's Exhibit Q to the FAC.

● Moreover, the long-arm statute, RULE 4(k)(2), provides for a plaintiff to sue foreign defendants in federal court on a federal claim with no need to allege concrete facts that would demonstrate that defendants are properly subject to personal jurisdiction. All that is necessary is a statement that it is possible that a plaintiff may later prove that defendant had minimum contacts within the U.S. Courts allow for unproven allegations of minimum contacts with the U.S. to suffice for the purpose of pretrial jurisdictional discovery. Thus, even where no contacts are meaningfully demonstrated, foreign defendants must defend themselves on foreign soil for pretrial jurisdictional discovery and likely for the entire lawsuit based on minimum contacts within the U.S. *Metro-Goldwyn-Meyer Studios, Inc. v. Grokster,* 243 F. Supp. 2d 1073 (C.D. Cal. 2003); *United States v. Swiss Am. Bank, Ltd.,* 116 F. Supp. 2d 217.

## STANDARD OF REVIEW

When considering an MTD under 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *SEC v. Apuzzo,* 689 F.3d 204, 207 (2d Cir. 2012); SEC v. Wyly, 788 F. Supp. 2d 92, 101 (S.D.N.Y. 2011). A motion to dismiss should be granted only if the complaint is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

• A complaint need not contain detailed factual allegations. If the complaint contains sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the plaintiff has met its burden of stating a claim with "facial plausibility." *Iqbal,* 556 U.S. at 678; *SEC V. Wyly,* 788 F. Supp. 2d at 101. Upon a motion to dismiss the court should not evaluate the merits of the allegations. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof . . . is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556; *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (on motion to dismiss, court should not "assay the weight of the evidence which might be offered in support thereof") (citing *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d Cir. 2010)); *Elastic Wonder, Inc. v. Posey,* Case No. 13 CV. 5603 (JGK), 2015 WL 273691, at *1 (S.D.N.Y. Jan. 22, 2015) (function of motion to dismiss is not to weigh evidence). Thus, a motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Freudenberg v. E*Trade Financial Corp.,* 712 F. Supp. 2d 171, 178-79 (S.D.N.Y. 2010). Rule 12(b)(6) mandates that MTDs should be granted only if a plaintiff can prove no set of facts to support claims that would entitle relief. *Bell Atlantic Corp v. Twombly,* 550 U.S. 540,

570 (2007), *Conley v. Gibson,* 335 U.S. 41, 48 (1957); ● A motion under Rule 12(b)(6) merely

tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally,

assume all facts as true, and draw all reasonable inferences in favor of the plaintiff. *Twombly,*

550 U.S. at 556-57. ● A complaint should never be dismissed because the court is doubtful that

the plaintiff will be able to prove all of the factual allegations contained therein. Id. ● In cases

involving fraud, Rule 9(b) sets out the standards a complaint must meet. It does not raise the

pleading standard to the level required to survive a motion for summary judgment or to prevail at

trial. Plaintiff need only set forth the particular facts of the fraud, which at this stage must be

accepted as true.  ● Moreover, Defendants repeatedly state throughout their MTDs that the FAC

pleadings are deficient. This allegation is no ground for dismissal under Rule 12(b)(6). *In re*

*Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d 281, 333 (S.D.N.Y. 2003). ● If Defendants

truly believed that the pleadings were deficient, they could have moved to for a more definite

statement under Rule 12(e). They did not because the fact-laden FAC is sufficiently clear and

detailed and Defendant's flawed allegations to the contrary should be disregarded. ● The U.S.

Supreme Court has articulated the appropriate standard a court must follow in deciding an MTD

under the Private Securities Legislative Reform Act ("PSLRA"). First, a court must accept all

factual allegations set forth in the complaint as true. *Tellabs, Inc. v. Makor Issues and Rights,*

*Ltd,* 551 U.S. 308, 322 (2007). Second, the court must consider the complaint in its entirety; "the

inquiry…is whether all of the facts alleged, taken collectively, give rise to a strong inference of

scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id.

Finally, the court must conduct a comparative inquiry: "[a] complaint will survive if a reasonable

person would deem the inference of scienter cogent and at least as compelling as any opposing

inference one could draw from the facts alleged." *Id.* at 324. ● The facts as alleged by Plaintiff

more than adequately survive such a comparison. ● Plaintiff's FAC with sufficient particularly states facts that support each element of Plaintiff's claims and thus withstands Defendant's MTDs. Plaintiff has set forth detailed allegations that fulfill each and every pleading requirement under 9(b.) answering the who, what, when, where, and how of his claims. As the Supreme Court noted in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), to survive a MTD, there simply must be "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" corroborating the claims. *Id.* at 556. Further, to plead scienter under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors. "The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs,* 551 U.S. at 324. A complaint survives if, "[w]hen the allegations are accepted as true and taken collectively," a reasonable person would "deem the inference of scienter at least as strong as any opposing inference." *Id.* at 326. ● As the Supreme Court clarified in *Matrixx Initiatives, Inc. v. Siracusano,* 131 S. Ct. 1309 (2011), courts are not to engage in a dual inquiry by first sorting through each component of scienter in isolation. Instead, courts should review "all the allegations holistically." *Id.* at 1324.  If the competing inferences are equally plausible, the complaint should be sustained. *Tellabs,* 551 U.S. at 331. Moreover, the Twombly Court stated that "a Complaint attacked by a Rule 12(b)(6) MTD does not need detailed factual allegations…," *Twombly,* 550 U.S. at 555. The Twombly plausibility standard, which applies to all civil actions does not prevent a plaintiff from "pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant," *Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir.2008), or where the belief is based on factual information that makes the inference of

8

culpability plausible, see *Iqbal,* 129 S.Ct. at 1949, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The *Twombly* Court also stated, "...we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." ● Although *Twombly* and *Iqbal* require "'factual amplification [where] needed to render a claim plausible,'" *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ross v. Bank of America, N.A (USA),* 524 F.3d 217, 225 (2d Cir.2008)), the contention that *Twombly* and *Iqbal* require the pleading of specific facts was rejected. ● It is "only the extraordinary case in which dismissal is proper" for failure to state a claim. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981) (emphasis added). ● A court may dismiss a complaint as a matter of law only if the complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). The court must not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Also, courts may not consider materials outside the pleadings when resolving a MTD. *Schneider v. California Dep't of Corrections,* 151 F.3d 1194, 1197 n.1 (9th Cir.1998). ● Instead, the court must decide "whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of a plaintiff's claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978). While Plaintiffs' Section 10(b) claims are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA, other of his claims, as described below, are not. *In re Scholastic Corp.,* 252 F.3d 63, 69-70 (2d Cir.2001). ● Rule 9(b) requires that allegations of fraud be stated with particularity. Additionally, under PSLRA, an action for money damages

requires proof of scienter, the complaint "[must] . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(2). Particularity requires (1) specifics of the omissions plaintiff contends were fraudulently omitted; (2) identity of the omitter (3) where and when the omissions occurred; and (4) why the omissions were fraudulent." *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir.1999); *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999). ● A court considering a MTD "is normally required to look only to the allegations on the face of the FAC." *Roth,* 489 F.3d at 509. Courts "may consider any written instrument attached to the FAC, statements or documents incorporated into the FAC by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). ● To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff must allege that "the defendant, in connection with the purchase or sale of securities, omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action in caused injury to the plaintiff." *Lawrence v. Cohn,* 325 F.3d 141, 147 (2d Cir.2003). That UBS executives acted with the required state of mind by actively encouraging fraud is recorded the FAC ¶¶ 189-190, 212, 231, 319-321, 485, 651-654, 675-681, 694-699, 745, 7761, 962-972.

## SUMMARY RECITAL OF THE UNDISPUTED AND DISPUTED FACTS

Plaintiff incorporates all of the facts, allegations and exhibits set out in the FAC. ● The Core Questions/Allegations Underlying Much of Plaintiff's Lawsuit are: Why did Defendants opt to conceal UBS's financial criminality? Offering documents are the primary and often the only source of information, as here, that informs an investors decision whether to invest in a security.

If UBS's financial crimes had been disclosed, as the security laws require, up-front in the "Risk Factors" section of the offering document for CEFL, no rational investor would have invested in CEFL. Moreover, why did EY fail to take appropriate remedial action by insisting that UBS disclose its financial crimes in the offering document for CEFL, or deny UBS unqualified audit opinions, or resign from the audit, or inform the SEC? EY does not deny that it served as "Expert" for the SEC-filed UBS AG shelf registration statement or that it audited the offering document for CEFL. ● Further, Schwab Defendants failed to alert Plaintiff to UBS's financial criminality, as other major broker-dealers did for their customers, FAC ¶ 98, and instead encouraged additional purchases of CEFL shares by granting margin loans to Plaintiff.

## SUMMARY RECITAL OF PLAINTIFF'S ARGUMENT

Defendants' meritless MTDs entirely bypass the standards courts apply to an MTD and are clearly intended more to delay by obfuscation of the issues involved than for any probative value. Defendants, in opposition to the entire body of law governing security offerings, allege that material risk factors need not be disclosed in an offering document. ● Moreover, nowhere have Defendants attempted to present an alternative to the extensive set of adequately pled allegations set out in the FAC. Why? Because there is no alternative set of facts except for the Defendant's joint and glaringly wrongful allegation that Defendant's disclosure of certain but not all of UBS's multi-decade serious financial crimes, buried hundreds of pages deep in a Swiss banks undistributed annual reports, somehow satisfies the Black Letter Law requirement for full disclosure in an offering document, which it does not. Defendant's flawed allegation throws mud in the face of the entire body of law governing full disclosure in the offering documents of newly issued securities as mandated by the U.S. Supreme Court, FAC ¶¶ 325, 326, 565, the Exchange Acts, FAC ¶ 566 and SEC Rules, FAC ¶ 565. Further, to avoid the 25-page requirement, much of

UBS's MTD is argued in small print footnotes and should be disregarded in its entirety. ● The MTDs avoid addressing any of Plaintiff's allegations, or the supporting statute and case law and the 25 exhibits. Defendant's hackneyed attacks on the adequacy of Plaintiffs" allegations, while lengthy, are unavailing. Defendants urge the Court to make premature decisions on materiality, and to impose and apply improper pleading standards for each of Plaintiff's 12 counts. If an offering document need not set forth material risk factors, as Defendants have outrageously alleged, and if securities issuers and underwriters may intentionally market defective securities as Defendants have not denied, and if broker-dealers are free to sell defective securities to the elderly, and if audit firms are free to grant unqualified opinion letters to international crime enterprises infected with a culture of criminality, then, and only then, dismissal of this action would be a lawful outcome. ● The FAC specifically identifies most of the undisclosed material risk factors in the offering document for CEFL known to Plaintiff before discovery. ● Consistent with Rule 9(b), the PSLRA, and 2nd Circuit' standards, the FAC specifies the time, date, place, and content of the alleged intentional omissions and why the omissions were misleading. The FAC alleges, with great particularity, a plethora of facts that when taken collectively demonstrate that Defendants in their desperate quest for profits issued a defective security and used a defective offering document to induce Plaintiff to invest in a defective security. The FAC cites numerous instances of UBS's intentional omission of material risk factors from the offering document, including an abundance of serious financial crimes. ● The FAC also alleges that Defendants had strong, personal pecuniary motives to make the materially false and misleading statements. These well-pled facts and many others, individually and collectively, raise a strong and cogent inference of scienter. ● Finally, the FAC's claims under the Exchange Acts should also be sustained because Plaintiff has adequately pled primary violations of §10(b) of the 1934

12

Act. For these reasons, and those more fully discussed below, this Court should deny

Defendants' MTDs in their entirety. ● Further, it is axiomatic that a plaintiff is not required to

plead his evidence "or specific factual details not ascertainable in advance of discovery. *Gibson*

*v. United* A complaint challenged under Rule 12(b)(6) "does not need detailed factual allegations

to survive. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The challenged complaint need

only make a "'showing'" of the plaintiff's "entitlement to relief." *Id.* at 555 n.3. Plaintiff's FAC

surely does just that and much more. As the Supreme Court has instructed, on a MTD "we do not

require heightened fact pleading of specifics, but only enough facts to state a claim to relief that

is plausible on its face." *Id.* at 570. Plausibility in this context, the Court has cautioned, "is not

akin to a `probability requirement." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). ● Plaintiff's

FAC contains considerable detailed factual information and 25 informative exhibits, including

UBS's undisclosed material risk factors. Even the name of the UBS product "CEFL" is missing

from the boilerplate offering document for CEFL, and not mentioned even once in the shelf

registration statement, or in the 28 pounds of Swiss bank UBS AG's annual reports and other

documents EY twice dumped on this Court and Plaintiff. ● Even the names, addresses and

qualifications of the persons who will manage the CEFL security and who created it are missing

as well as many more material risk factors including UBS's numerous serious financial crimes,

its multi-year term of criminal probation, the possibility it will have its eligible issuer status and

loss of license to conduct a securities business in the U.S., all of which, and much more is

alleged and documented in the FAC. ● Moreover, UBS Defendants do not deny they possess the

skills, resources, motive and opportunity to manipulate CEFL for their own financial benefit and

to the detriment of Plaintiff, and even brag that they will and have done just that. ● Nor do

Defendant's deny that the undisclosed material risk factors should be disclosed in the CEFL

13

offering document and not just certain of the UBS crimes that are buried hundreds of pages deep

in Swiss bank UBS AGs voluminous annual reports, documents not distributed to Plaintiff and

that do not mention CEFL, even once. Without exception, U.S. securities Black Letter Law

demands an issuer provide full disclosure of all material risk factors in an offering document.

● EY Defendants do not address or deny most of Plaintiff's allegations or EYs failure to

insist that UBS engage in full disclosure in its offering document, instead insisting that all that is

required of EY is a review of UBS's financial documents, which entirely fails to meet the

obligations of an external auditor as set out in the FAC ¶¶ 477, 498, 517-523, 529-541. ● UBS

claims Plaintiff has not explained what makes the material risk factors material. Not true. The

FAC explains materiality as it was explained by the U.S. Supreme Court, FAC ¶ 326. ● Surely,

the fact that UBS did not disclose its serious crimes, several of which are directly related to the

issues in this action, is eminently germane to an investor's investment decision and to argue to

the contrary is as absurd as arguing that $2 + 2 =$ five. Equally absurd is UBS alleging that its

undisclosed four-year term of criminal probation is not germane, as is UBS alleging that its being

on the verge of being declared an ineligible issuer and the loss of its license to conduct a

securities business in the U.S. is not germane. ● Another, absurd assertion by UBS is that the

FAC should be dismissed because on the one hand it is "prolix," and on the other that it fails to

meet the 'heightened pleading standard" of PSLRA, UBS MTD, 24-25. The term "prolix" is

often interpreted to mean bounteous, copious, plentiful, superabundant, detailed, or rich. Perhaps

the term UBS intended was not "prolix," but rather "poleax," which is what UBS is asking this

Court to do to Plaintiff's case, "poleax" it instead of considering it on its merits. The length of

Plaintiff's FAC was a necessary and inevitable byproduct of the complexity of the issues

involved, the number of Defendants and the need to correct the initial Complaint to accord with this Court's order, all in a single document.

● The U.S. Supreme Court, Exchange Acts and common law unequivocally mandate the full disclosure all material risk factors in an offering document, a mandate UBS intentionally ignored and EY failed to insist that UBS comply with. The U.S. Supreme Court held little back when it declared: "We have recognized time and again, a 'fundamental purpose' of the various Securities Acts was to substitute a philosophy of full disclosure for the philosophy of caveat emptor, and thus to achieve a high standard of business ethics in the securities industry, FAC ¶ 326. *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 1, (1972); *Affiliated Ute Citizens v. United States,* 406 U.S. 128 (1972); *Santa Fe Industries Inc., v. Green,* 430 U.S. 406; *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.,*,538 F.Supp.2d 662, 669 (S.D.N.Y.2008) ("[R]isk disclosures must accurately characterize the scope and specificity of the risk, as understood at the time the statements are made[.]"); *In re Am. Int'l Grp., Inc.* 2008 Sec. Litig., 741 F.Supp.2d 511, 531 (S.D.N.Y.2010), ("[G]eneric risk disclosures are inadequate to shield defendants from liability for failing to disclose known specific risks."). ● The PSLRA erected high hurdles for plaintiffs to clear to survive a MTD. Typically, defendants, as here, use MTDs in a desperate attempt to preclude the initiation of discovery and a jury trial by, as here, making use of formulaic and hyper-technical arguments, which fail to dig into the facts of the case, expose the flaws of the complaint in detail, and tell a compelling story why plaintiff failed to allege a sufficient inference of scienter, or reliance, or loss causation or why the complaint lacks plausibility. Of course, given UBS's extensive record of financial criminality, it would be difficult for Defendant's to assert UBS's honesty.

• The U.S. Supreme Court has ruled that on an MTD, "...we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Plausibility in this context, the Court has cautioned, "is not akin to a `probability requirement." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint makes out a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In making that determination, a court "construe[s] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Plaintiffs' favor."

• Plaintiff's FAC more than adequately details the factual basis for the claims asserted against Defendants under § 10(b) of the Exchange Act and Rule 10b-5. *Kleinman v. Elan Corp.,* 706 F.3d 145, 152 (2d Cir.2013). Alternately, Plaintiffs' claims under §§ 11 and 12(a)(2) of the Securities Act do not require a showing of scienter, reliance, or loss causation, and require Plaintiff to show only that Defendants issued or signed a registration statement containing "an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); see also *Fait,* 655 F.3d at 109. • Claims under § 18 of the Exchange Act likewise need not allege scienter. *Ross v. A.H. Robins Co.,* 607 F.2d 545, 556 (2d Cir.1979). • Defendant's MTDs fail to make any forceful arguments against any of the allegations in Plaintiff's FAC. Instead, the superficial MTDs assert that old saw that the allegations are too vague to satisfy the pleading standard, while entirely failing to engage in a detailed defense of the challenged allegations. In its MTD UBS masquerades as an honest broker/bank, which it clearly is not. And EY masquerades as an innocent bystander to UBS's numerous serious financial crimes, when its innocence is precluded by the billion-plus in fees it has received from UBS for its pretended

16

innocence. Instead of dealing directly with Plaintiff's allegations, Defendants have engaged in producing lengthy MTDs that are merely thinly disguised attempts at perception distortion by repeatedly citing inapplicable case law and obviously flawed argumentation. ● There is not nearly enough space in this Opposition to note the numerous defects in the numerous cases Defendants cite, cases that are often far from being on point and occasionally stand for the opposite of what Defendants intended. Plaintiff will only take note of a few of them. When citing *Kurtz v. Foy,* 884 N.Y.S. 2d 498, 501, EY stretches far afield to realty law, which does not afford the same investor protections as the U.S. security laws, to show that if Plaintiff wasn't so stupid he would have perused Swiss bank UBS AG's nearly 1,000-page, small print, single-spaced annual reports to find buried hundreds of pages deep, certain of the UBS's serious financial crimes UBs failed to disclose in the offering document. Even here, EY errs. EY's cite maintains precisely the opposite of EY's argument, stating instead that "…a purchaser's failure to determine a transaction's true nature by inspecting public records is not fatal when "the facts were peculiarly within the knowledge of the defendant and were willfully misrepresented." *Cetnar v Kinowski,* 263 A.D.2d 842, 844 [1999]. ● Moreover the "Buried Facts Doctrine" holds that a disclosure is deemed inadequate if presented in a way that conceals or obscures the information sought to be disclosed. The doctrine applies when the material risk factors in question are intentionally buried in a voluminous document, as here, FAC ¶¶ 91-92. *Werner v. Werner,* 267 F.3d 288 (3d Cir. Pa. 2001).

### PLAINTIFF'S PLEADINGS

Plaintiff has adequately pled scienter. The PSLRA states that with respect to each alleged omission, a plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," i.e., scienter. 15 U.S.C. § 78u-4(b)(2). Plaintiff

must show, and did show, that Defendant's had an intention to defraud Plaintiff. The most obvious flaw in Defendant's arguments against scienter is their utter failure to engage in a fact-specific analysis of the FAC's allegations about what the Defendants knew with regard to each allegation of fraud. Moreover, under the "core operations" inference of scienter, and the "corporate scienter" doctrine, a plaintiff need not plead specific facts establishing the corporate scienter.  For example, the core operations inference posits that scienter can be inferred where it would be "absurd to suggest" that a senior executive doesn't know facts about the company's "core operations." Scienter is established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler,* 264 F.3d 131, 138 (2d Cir.2001). In evaluating whether the pleadings suggest a strong inference of scienter, the "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs, Inc.,* 551 U.S. at 326. The inference of scienter in the FAC is "more than merely plausible or reasonable—it is cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs, Inc.,* 551 U.S. at 314, "...the inquiry...is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* Finally, the court must conduct a comparative inquiry: "[a] complaint will survive if a reasonable person would deem the inference of scienter cogent and at the court must consider the complaint in its entirety; "the inquiry...is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* Finally, the court must conduct a comparative inquiry: "[a] complaint will survive if a reasonable person would deem the inference of scienter cogent and at least as compelling as

any opposing inference one could draw from the facts alleged." *Id.* at 324. The facts as alleged

by Plaintiff more than adequately survive such a comparison. ● Plaintiff's FAC with sufficient

particularly states facts that support each element of Plaintiff's claims and thus withstands

Defendant's MTDs. Plaintiff has set forth detailed allegations that fulfill each and every pleading

requirement under 9(b.) answering the who, what, when, where, and how of his claims. As the

Supreme Court noted in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), to survive a MTD,

there simply must be "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence" corroborating the claims. Id. at 556. ●Further, to plead scienter under the PSLRA, a

complaint must "...state with particularity facts giving rise to a strong inference that defendants

acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading

investors. "The inference that the defendant acted with scienter need not be irrefutable, i.e., of

the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs,* 551 U.S.

at 324. A complaint survives if, "[w]hen the allegations are accepted as true and taken

collectively," a reasonable person would "deem the inference of scienter at least as strong as any

opposing inference." *Id.* at 326. As the Supreme Court clarified in *Matrixx Initiatives, Inc. v.*

*Siracusano,* 131 S. Ct. 1309 (2011), courts should not engage in a dual inquiry by first sorting

through each component of scienter in isolation. Instead, they should review "all the allegations

holistically." *Id.* at 324.  If the competing inferences are equally plausible, the complaint should

be sustained. *Tellabs,* 551 U.S. at 331. ● Moreover, the *Twombly* Court stated that a Complaint

attacked by a Rule 12(b)(6) MTD does not need detailed factual allegations. *Twombly,* 550 U.S.

at 555. The *Twombly* plausibility standard, which applies to all civil actions does not prevent a

plaintiff from "...pleading facts alleged upon information and belief where the facts are

peculiarly within the possession and control of the defendant," *Boykin v. KeyCorp,* 521 F.3d

202, 215 (2d Cir.2008), or where the belief is based on factual information that makes the inference of culpability plausible, see *Iqbal*, 129 S.Ct. at 1949, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The *Twombly* Court also stated, "…we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Although *Twombly* and *Iqbal* require "…`factual amplification [where] needed to render a claim plausible.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ross v. Bank of America, N.A (USA),* 524 F.3d 217, 225 (2d Cir.2008)), the contention that *Twombly* and *Iqbal* require the pleading of specific facts was rejected.● It is "…only the extraordinary case in which dismissal is proper" for failure to state a claim. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). ● A court may dismiss a Complaint as a matter of law only if the Complaint: (1) lacks a cognizable legal theory; or (2) fails to contain sufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). ● The court must not look at whether the plaintiff will "…ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Also, courts may not consider materials outside the pleadings when resolving a MTD. *Schneider v. California Dep't of Corrections,* 151 F.3d 1194, 1197 n.1 (9th Cir.1998). Instead, the court must decide "…whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of a plaintiff's claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978). ● In *Novak v. Kasaks,* 216 F.3d 300 (2d Cir.2000) the Court identified four types of allegations that may be sufficient to allege scienter: "[D]efendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior;

20

(3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Novak,* 216 F.3d at 311. Plaintiff relies principally on the first three of the four *Novak* rubrics, alleging that UBS (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate. *Novak,* 216 F.3d at 311. To plead scienter based on conscious misbehavior or recklessness, "…the Complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin,* 253 F.3d 423, 432 (9th Cir.2001). ● Plaintiff has pled conscious recklessness and deceit by alleging defendants' knowledge of undisclosed material risk factors and intentionally omitted these from the "Risk Factors" section of the offering document for CEFL. *In re Bayer AG Sec. Litig.,* No. 03 Civ. 1546, 2004 WL 2190357, at *15 (S.D.N.Y. Sept. 30, 2004) (citing *Novak,*216 F.3d at 308). "In cases in which scienter is pled in part by alleging that the defendant knew facts or had access to information suggesting that their public statements were not accurate, the scienter analysis is closely aligned with the analysis as to misleading statements." *In re Alstom SA,* 406 F.Supp.2d 433, 456 (S.D.N.Y. 2005). ● All of the Section 10(b) Defendants were allegedly privy to material undisclosed facts concerning the public offering of CEFL. UBS Defendants allegedly prepared, approved, signed, and/or disseminated the documents and statements that contain the material omissions upon which Plaintiffs' 10(b) claims are predicated. Plaintiffs' factual allegations, pled amply and with particularity, support an inference that is "…at least as compelling as any opposing inference" that any of the Defendants have alleged. Construing the allegations in the FAC in the light most favorable to Plaintiff, the Court should conclude that

21

Plaintiff has satisfied his burden of alleging facts giving rise to a strong inference of fraudulent intent. *In re New Century,* 588 F.Supp.2d 1206, 1230 (C.D.Cal.2008) (allegation that defendants certified financial statements despite knowledge of internal control problems states a claim for deliberately reckless misstatements); *In re Nortel Networks Corp. Sec. Litig.*, 238 F.Supp.2d 613, 631 (S.D.N.Y.2003) (allegations that "…[d]efendants either had actual knowledge of or ready access to facts that contradicted their public statements" adequately plead scienter). No opposing inference is more compelling. Accordingly, Plaintiffs' allegations are sufficient to satisfy their pleading obligation with regard to scienter. Further, Defendants' motives contribute to a strong inference of scienter: A personal pecuniary motive is not required to plead scienter. *Daou,* 411 F.3d at 1023. However, "…personal financial gain may weigh heavily in favor of a scienter inference." *Tellabs,* 551 U.S. at 325; *In re New Century,* incentives such as bonuses . . . may strengthen an inference of scienter." FAC ¶¶ Exhibit H, 30, 33, 70-127, 143-193, 199-218, 226, 229, 246, 248-293, 288, 332, 335-381, 445-448, 454, 463, 467-468, 488-490, 493, 504, 519-975.

• Plaintiff has adequately alleged control person liability under Section 20(a) against certain UBS executive control Defendants and EY partners named in the FAC by demonstrating that these Defendants can be held liable for both a primary violation and as control persons because alternative theories of liability are permissible at the pleading stage. *Police and Fire Retirement System of the City of Detroit v. SafeNet, Inc.,* 645 F.Supp.2d 210, 241 (S.D.N.Y.2009). In order to establish a prima facie case of liability under § 20(a), a plaintiff must show: (1) a primary violation by a control person; (2) control of the primary violator by the defendant; and (3) `that the controlling person was in some meaningful sense a culpable participant' in the primary violation. *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998) (quoting *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir. 1996)). As demonstrated above, Plaintiff has stated a

claim under Rule 10b-5 with respect to Defendants' primary participation in UBS's material omissions. Plaintiff has thereby satisfied the first element. With respect to the second element, "…determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator." *Boguslavsky,* 159 F.3d at 720. At the pleading stage, allegations of a Section 20(a) defendant's control need not be set forth with particularity. *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 473-75, (S.D.N.Y. 2010) (allegations that defendants were senior officers and board members and possessed the power to cause the direction of the company's management and policies suffice to satisfy the second element of pleading control person liability). A plaintiff must only show some indirect means of discipline or influence to plead control. *In re Moody's Sec. Litig.*, 599 F.Supp.2d 493, 517 (S.D.N.Y.2009). Of the several executive Defendants and EY partners, none of them has denied their involvement in Plaintiff's allegations of securities fraud. These allegations are sufficient to satisfy the control element under the pleading standard of Rule 8(a). With respect to the third element of control person liability under Section 20(a), the pleading requirements for "culpable participation" are satisfied by the same allegations that satisfy the scienter pleading requirements. *In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, 381 F.Supp.2d 192, 235 (S.D.N.Y.2004) ("allegations of scienter necessarily satisfy the [culpable participation] requirement.") "In order to plead that a defendant culpably participated in an alleged fraud, Plaintiff must allege that the Defendants acted at least with recklessness, in the sense required by Section 10(b) of the Exchange Act and Rule 10b-5." *In re Take-Two Interactive Sec. Litig.,* 551 F.Supp.2d 247, 307-08 (S.D.N.Y.2008). Plaintiff's FAC is replete with allegations of intentional deceit and recklessness sufficient to satisfy the culpable participation element. Accordingly, Plaintiff has stated a claim for control person liability under Section 20(a) of the Exchange Act against each of the named executives

person allegations evaluated under the standard set forth in Fed. R. Civ. P. 8(a). ¶¶ ¶¶

94, 333, 465, 476-477, 488, 560, 615, 663, 747, 752, 778,803, 809, 821, 823, 864, 879, 887, 925.

● Plaintiff has adequately pled that the various UBS omissions of material risk factors in the offering document for CEFL, certain of which appear buried hundreds of pages deep in Swiss bank UBS AG's annual reports, which were not disclosed to or distributed to Plaintiff, and which Plaintiff was not aware of at the time he was investing in CEFL. These non-disclosures of material risk factors in the offering document do not fulfill Defendant's disclosure obligations under the federal securities laws by failing to amplify the magnitude of the risk involved in investing in CEFL. ● These undenied, undisclosed material risk factors include: (1) UBS's failure to disclose its vast history of serious financial crimes; (2) its four-year term of criminal probation as administered by the Criminal Division of the U.S. DOJ; (3) the threat of loss of license to conduct a securities business in the U.S.; (4) the threat of revocation of it eligible issuer status; (5) that UBS paid billions in fines, penalties, disgorgements, restitutions and settlements as restitution for its crimes; (6) that UBS was saved from losing its U.S. license by a series letters from high-profile UBS attorneys to financial regulators imploring them to give UBS another chance before initiating license revocation; (7) that UBS signed a non-prosecution agreement with the DOJ and then violated the terms of that agreement by committing new crimes; (8) that no reasonable investor would invest in CEFL if UBS's serious financial crimes were disclosed in the offering document for CEFL; (9) that UBS's criminal behavior dates back to at least WWII and has grown exponentially since then, especially from 2007 through 2017; (10) that UBS awarded its CEO a large raise in a year UBS paid out billions to redress its financial crimes; (11) that UBS has pocketed huge profits from its decades-long and continuing

24

crime spree; (12) that UBS has executed some of the most serious financial crimes ever recorded; (13) that UBS paid former President Clinton and the Clinton Foundation millions to help them evade paying U.S. income taxes, bribery of public officials that has continued; (14) that UBS employees called UBS securities "Crap and Vomit;" (15) that CEFL is not once mentioned in the shelf registration statement from which CEFL evolved or in CEFL's offering document; (16) that EY was paid huge audit and consulting fees by UBS for issuing UBS as series of undeserved unqualified audit opinion letters; (17) that EY's undeserved unqualified audit opinion letters were instrumental in allowing UBS to continue its securities business and continue its financial crime spree; (18) that EY was fully aware of UBS's undisclosed financial crimes and failed to insist that UBS include them in the offering documents for CEFL; (19) that EY failed to inform the SEC about UBS 's crimes and failed to withdraw as UBS's auditor after learning about UBS's financial crimes; (20) that not a single executive or employee of any UBS business entity is named in the offering document for CEFL or the UBS AG shelf registration statement. FAC ¶¶ 248-293, 778-780, 790, 797, 835, 843, 849, 855, 862, 869, 878, 890, 904, 912, 920-923, 928, 937, 952, 955, 965.

• Plaintiff has adequately pled superior knowledge, securities fraud, fraudulent inducement, fraudulent concealment, common law fraud, negligence and negligent concealment by alleging that the Defendants had superior knowledge regarding that frauds not readily available to the plaintiff and that the Defendants knowingly and with conscious, deliberate and reckless steps to conceal that superior knowledge from the Plaintiff. The Exchange Acts of 1933 and 1934 provide for a private right of action for any investor who purchases securities pursuant to an offering document that, at the time the offering became effective, omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading. 15

25

U.S.C. § 77k (West 2009). Section 11 extends liability to issuing companies, executives and directors, underwriters, and accountants who provide their consent to being named as having prepared or certified any part of the offering document. *Id.* Section 12(a)(2) expands the liability of underwriters beyond that provided in Section 11 by providing a private right of action for any investor who purchases securities based on any prospectus or oral communication that includes a material omission. 15 U.S.C. § 77l (a)(2). Section 15 further extends liability to any defendant that controlled a primary violator of Section 11. 15 U.S.C. § 77o. ● "The test for whether a statement is materially misleading under Section 12(a)(2) is identical to that under Section 10(b) and Section 11: whether the omissions, viewed as a whole, would have misled a reasonable investor. *Rombach v. Chang,* 355 F.3d 164, 178, n. 11 (2d Cir.2004). Plaintiff purchased CEFL, an ETN-type security issued by UBS AG and underwritten by UBS Securities LLC pursuant to an offering document called a Product Supplement, itself issued under a UBS AG shelf registration statement used by UBS in numerous ETN offerings. For each UBS offering, the shelf registration statements were supplemented by an offering document/Product Supplement instead of an actual prospectus, which has the very same disclosure requirements as a prospectus.

● Plaintiff has asserted claims against several UBS entities, including the signing and controlling executive Defendants, and the EY audit partners, all of whom have admitted they were aware of the material omissions and did nothing to disclose these material facts in the "Risk Factor" section of the offering document for CEFL so as to make that offering document not misleading. Defendants contend that Plaintiffs' Section 11 claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). However, Rule 9(b) is only applicable to Section 11 claims "…insofar as the claims are premised on allegations of fraud." *In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 631 (S.D.N.Y. 2007) (quoting *Rombach v. Chang,* 355 F.3d

164, 171 (2d Cir.2004). Section 11 of the Securities Act, unlike Section 10(b) of the Exchange

Act, does not require that the defendant acted with scienter. FAC ¶¶ 30, 33, 70-127, 143-193,

199-218, 226, 229, 246, 248-293, 288, 332, 335-381, 445-448, 454, 463, 467-468, 488-490, 493,

504, 519-975.

● Plaintiff has adequately pled that the UBS Defendants issued and underwrote a defective

offering document and a defective security with a deliberate and reckless intent to defraud

Plaintiff by alleging specific plausible factors and strong inferences that show that the

Defendants knew the omissions of the material risk factors from the offering document for CEFL

were deceitful and reckless and were intended to induce plaintiff to invest in CEFL.● Rule 10b-

5 provides: "A statement is material only if there is a substantial likelihood that the disclosure of

the omitted fact would have been viewed by the reasonable investor as having significantly

altered the total mix of information made available." *In re International Business Machines*

*Corporate Sec. Litig.*, 163 F.3d 102, 106-07 (2d Cir.1998) (citing *Basic v. Levinson*, 485 U.S.

224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). FAC ¶¶ 575, 596, 737. ● Although "...a

corporation is not required to disclose a fact merely because a reasonable investor would very

much like to know that fact," *In re Optionable Sec. Litig.,* 577 F.Supp.2d at 692, once a

corporation does speak, its communication creates "a duty to disclose all facts necessary to

ensure the completeness and accuracy of [the corporation's] public statements," *Marsh &*

*Mclennan Cos. Sec. Litig.,* 501 F.Supp.2d 452, 469 (2d Cir.2006). ● The undisputed purpose of

the federal securities laws is to ensure that investors have sufficient information to assess and

avoid undue risks by refraining from purchasing securities that carry greater risks than the

investor is willing to bear. ● Plaintiffs need not plead omissions on the part of each of the

Section 10(b) Defendants separately. Rather, the group pleading doctrine allows Plaintiffs to

27

"…circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent." *In re BISYS Sec. Litig.,* 397 F.Supp.2d 430, 438 (S.D.N.Y.2005). Except for the Schwab Defendants, all other Defendants are alleged to have had direct involvement in the everyday business of UBS and Plaintiff is therefore entitled to rely on a presumption that omissions in the offering document for CEFL are the collective work of those individuals. *In re Oxford Health Plans, Inc.,* 187 F.R.D. 133, 142 (S.D.N.Y.1999). ● Moreover, fraudulent intent is a state of mind, a fact for a jury to decide. In *Credit Suisse First Boston Corp. v. ARM Financial Group, Inc.,* the plaintiff investors alleged that the defendant issuer failed to disclose that the short-term funding contracts upon which it relied could be redeemed on as little as seven days' notice, creating a tremendous liquidity risk that ultimately materialized, leading the issuer to suffer large losses and a corresponding collapse of its stock price. The defendant sought shelter in its Form 10-K disclosure, which the Court deemed inadequate. *Credit Suisse First Boston Corp. v. ARM Financial Group, Inc.* No. 99 Civ. 12046, 2001 WL 300733, at *1-2 (S.D.N.Y. Mar. 28, 2001). ● Similarly, Disclosures of specific material risk factors like those in Swiss bank UBS AG's annual reports do not shelter Defendants from liability because they failed to disclose those facts in the offering document for CEFL. FAC ¶¶ 615-646, 88, 120, 189-190, 248-249, 287, 307, 315, 330-331, 349, 454, 575, 586, 610, 613, 733, 737, 791, 814, 820, 954.

● Plaintiff has adequately pled Section 11 and Section 12(a)(2) claims against the UBS underwriter Defendants: When viewed as a whole and in the light most favorable to Plaintiff, the allegations regarding the shortcomings of the offering document for CEFL are adequate to state a claim under Sections 11 and 12(a)(2), for substantially the reasons stated in *Rombach v. Chang,* 355 F.3d 164, 178, n. 11 (2d Cir. 2004). ● Just as no rational investor would entrust

funds to Madoff once his Ponzi scam was exposed, had UBS's crimes been disclosed, UBS's

ETNs, including CEFL, would be shunned. FAC ¶¶ 114-122, 210-211, 361, 369, 376-381, 451-

454500-502, 527-530, 550, 560-562, 570, 671-678, 725,793, 900.

● Plaintiff has adequately pled Section 11 claims against EY and the falsity of the EY auditor

partner's unqualified opinion letters. In their MTD, EY, the decades-long, $83 million-a-year in

fees auditor of UBS, an incontrovertible international financial criminal, claims clean hands

regarding Plaintiff's charges. While $83 million-a-year buys plenty of soap, the that soap did not

result in clean EY's hands. EY's consciousness of guilt is recorded at FAC ¶¶ 319-321. ● Under

some totally contorted rationale, EY falsely claims (1) that it was not UBS's auditor (EY MTD,

page 1),  this even though Plaintiff has produced documentary evidence in the form of signed

audit opinion letters that prove EY was UBS's auditor in both the U.S. and worldwide; (2) that

Plaintiff has not particularized his claims against EY (EY MTD, page 1), even though Plaintiff's

FAC is replete with particularized allegations against EY; (3) that Plaintiff does not claim EY's

UBS's audited financial statements were misleading (EY MTD, page 1), even though Plaintiff's

allegations involve the offering document for CEFL and not UBS's audited financial statements,

which are, by the way, misleading in that they grant UBS undeserved unqualified audit opinions

and bury UBS's vast criminal history hundreds of pages deep in Swiss bank UBS AG's annual

reports; (4) that Plaintiff's reliance on the offering document for CEFL was ill-advised because

he should have instead relied on "news articles," "government websites," and "USB's [sic] own

financial statements (EY MTD , pages 1-2), all of which is nonsensically ludicrous and an

admission that UBS's offering document was not to be relied on and offering documents are

absent of meaning, and UBS's financial statements were not presented or even alluded to in the

offering document for CEFL; (5) that the Court need not bother to read Plaintiff's FAC because

"…none of the twelve counts is adequately pleaded," and that the Court should not grant any further amendments because EY says so, a hissy fit if ever there was one (EY MTD, page 2); and (6) EY's meritless assertion of *res judicata* as any prior Plaintiff claim was dismissed without prejudice. FAC ¶ 59. Conversely, EY may be held liable under Section 11 if in the conduct of their audit they failed to conduct audits that comply with GAAS (Generally Accepted Accounting Standards) and identify any failures to conform with GAAP (Generally Accepted Accounting Principles) on the part of the audited company. *In re WorldCom, Inc. Sec. Litig.*, 352 F.Supp.2d 472, 492-93 (S.D.N.Y.2005) plaintiffs alleged that PwC's audited financial statements were not prepared in accordance with GAAP and that PwC did not conduct its audit in accordance with GAAS. ● Here, Plaintiff alleges that EY's audit operational and control partners had certain obligations to assure that the offering document for CEFL set out the full array of risk factors required for an ordinary investor to assess the serious risk factors inherent in investing in CEFL. EY's alleged failure to meet these obligations resulted in the unwarranted unqualified opinions they granted to UBS from 2004 to 2017, while profiting to the tune of over a billion dollars. ● Where a plaintiff has made well-pled allegations that an auditor blessed financial statements that violated certain identified GAAP principles and were "…fundamentally misleading to investors," it is inappropriate to dispose of the claims at the MTD stage. *In re Global Crossing, Ltd. Sec. Litig.,* 322 F.Supp.2d 319, 338-40 (S.D.N.Y.2004). Rather, because "…[e]ventual evidence on industry practice or expert testimony are likely to shed light on this question," the determination of whether EY and its named audit partners cannot be determined in advance of the development of the record." ● The EY unqualified audit opinion letters are both objectively false and subjectively false, and those EY partners who signed them could not

believe the unqualified opinions they expressed. FAC ¶¶ 59, 79, 211, 277-281, 319-321, 332, 346-348, 360, 363, 454, 477, 483-385, 493-499, 587, 610, 656-657, 673, 740-742, 816-975.

• Plaintiff has adequately pled aiding and abetting by alleging how and by whom the aiding and abetting was carried out. Defendants' argue that the aiding and abetting claims (Counts 2 and 10 and elsewhere) are without merit as they offer nothing to support that allegation and simply ignores the FAC's numerous particularized factual allegations, which are more than adequate at the pleadings stage to render Plaintiff' claims plausible. • The reasonable inferences that flow from Plaintiff's fact-laden allegations demonstrate that UBS's intentional misconduct was, and still is, part of an overall corporate strategy to defraud unsuspecting and underinformed investors. Given the reality that more detailed information regarding the Defendants' misconduct are matters to be developed more fully in discovery and resolved at a later phase in this litigation. *Higgins v. New York Stock Exch., Inc.,* 10 Misc. 3d 257, 290, 806 N.Y.S.2d 339, 366 (Sup. Ct. N.Y. Co. 2005) (sustaining aiding and abetting claim on a motion to dismiss.) FAC ¶¶ 14-24, 88, 603-604, 833-837, 875, 909-910, 932-939.

• Plaintiff has adequately pled requisite contacts: Under controlling law, the two *separate* tests required for the exercise of personal jurisdiction over a foreign parent company by virtue of its relationship to a subsidiary that has continual operations in the forum have been satisfied: the "alter ego" and the "agency" tests. The Second Circuit's test does not require that "...the defendant exercise direct control over its putative agent." *Wiwa,* 226 F.3d at 95, only the sufficient importance test without requiring any control over Defendant's extensive contacts in New York warrant the exercise of general and personal jurisdiction over the foreign entities of UBS and EY. *Bank Brussels Lambert v. Fiddler Gonzolez & Rodriguez,* 305 F.3d 120, 122 (2nd

31

Circ. 2002); *Burger King Corp., v. Rudzewicz,* 471 U.S. 463, 475 (1985); *Chloe,* 616 F.3d at 169;

*Retail Software Servs. Inc., v. Lashlee,* 854 F.2d 18, 22 (2nd Circ. 1988).

● Plaintiff has adequately pled breaches of fiduciary duty by alleging the existence of fiduciary

duties owed to Plaintiff and how those duties were breached by the Defendants. Clearly, liability

accrues to the Defendants, who, as here, were under a public duty to disclose the material risk

factors in the offering document for CEFL and did not. All that is necessary is that the material

risk factors withheld are such that a reasonable investor might have considered them important in

the making an investment decision. FAC ¶¶ 112, 230, 264, 285, 297-299, 347, 466, 535-537,

546, 714, 738, 750-751, 774-775, 840, 873, 894-896, 908-939.

● Plaintiff has adequately pled civil conspiracy by alleging underlying torts and further alleging

how and by whom the civil conspiracy was brazenly carried out over an astonishing, decades-

long timeframe. FAC ¶¶ 14-24, 79, 88, 120, 160, 165, 189-190, 211, 277-281, 248-249, 287,

307, 315, 330-332, 346-349, 360, 363, 454, 477, 483-485, 493, 496, 499, 587, 603-604, 610-646,

693, 791, 656-657, 673, 733,740, 742, 814-975.

● Plaintiff has adequately pled unjust enrichment by describing the loss he experienced as a

result of the Defendant's misconduct of the defendants and that it is against good conscience for

the Defendants to benefit from the upstream flow of billions of dollars of capital Defendants

received from their mutual participation in the financial scheme to defraud Plaintiff and many

other elderly investors. FAC ¶¶ 14-24, 79, 88, 120, 160, 165, 189-190, 211, 248-249, 262, 277-

281, 287, 307, 315, 330-332, 346-349, 360, 363, 372, 454, 477, 483-485, 493, 496, 499, 542,

587, 603-604, 610-646, 693, 791, 656-657, 673, 733, 740, 742, 747, 814-975.

32

• Plaintiff has adequately pled reasonable reliance even though that was not necessarily necessary. Under § 11, all that is necessary is that the facts withheld from the offering document be material in the sense that a reasonable investor might have considered them important regarding whether to invest or not. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 384 [90 S.Ct. 616, 621; *In re Constar Int'l, Inc. Sec. Litig.,* 585 F.3d 774, 783 (3d Cir. 2009); *Rombach v. Chang,* 355 F.3d 164, 169 n.4 (2d Cir. 2004); *Westinghouse Elec. Corp. v. '21' Int'l Holdings, Inc.,* 821 F. Supp. 212, 218 (S.D.N.Y. 1993); *Ahern,* 611 F. Supp. at 1479; *In re Diasonics Sec. Litig.,* 599 F. Supp. 447, 452 (N.D. Cal. 1984). This Black Letter Law requirement for full disclosure and Defendant's intentional non-disclosures establish the requisite element of causation in fact. *Chasins v. Smith, Barney & Co.,* 438 F.2d [1167] at 1172. The reliance requirement is not 'designed to shield perpetrators of fraud by forcing investors to conduct exhaustive research every time they invest money'. FAC ¶ 460.' *Terra Securities,* 740 F. Supp. 2d at 451 (quoting *Alexander v. Evans,* No. 88 Civ. 5309, 1993 WL 427409, at *16 (S.D.N.Y.1993), FAC ¶¶ 346-348, 453-454, 482-488, 496-502, 506-541, 656-657. • Moreover, EY's MTD goes to great lengths to minimize EYs role as UBS's external auditor, claiming that only Ernst & Young Ltd., was UBS's auditor and have replaced the name of UBS's other audit entity, Ernst & Young LLP with the name EY-US. As described in the FAC ¶¶ 24, 480-482, 490, Ernst & Young LLP was the auditor of all U.S.-based UBS entities, including CEFL's underwriter UBS Securities LLC, and was a lead auditor, along with Ernst & Young Ltd. in the audit of all UBS foreign entities. Ernst & Young LLP partners co-signed the audit opinion letters of the UBS foreign entities. EY also claims that EY-Global, Ernst & Young Ltd, and Ernst & Young LLP have no connection to each other. If that were true, why were EY U.S. partners co-leading the audit of UBS's foreign operations along with EY's foreign partners and why is all of

the audit fee revenue consolidated into EY-Global financial reporting?  The EY non-connection allegation of its various entities is as absurd as declaring Chevy, Buick and Cadillac are not connected to GM. GM divisions share resources like engines and engineers, just as EY audit entities share resources and auditors and consolidate annual fees under the EY-Global umbrella organization. It is undisputed that EY-Global partners supervise the partners and operations of all EY audit entities, FAC ¶¶ 25-30, 490-491. If EY-Global were not to other EY audit entities what GM is to its divisions, what is their function? EY is silent. Discovery, which UBS and EY are desperate to avoid, will prove EY-Global's true plasticity. ● Moreover, EY Ltd. and EY LLC signed UBS AG's audit establishing alter ego and agency; *Bauman v. Daimler Chrysler Corp.,* 644 F.3d 909, 920 (9th Cir. 2001) holding subsidiary was parent's agent for purposes of personal jurisdiction; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct 2174, 85 Led,2d 528 (1985); *Schwarzenegger,* 374 F.3d at 800; *Rutsky & Co. Ins. Servs, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003) agency test. FAC ¶ 24, 100-102, 104, 114, 317, 458, 461-462, 480-482, 490, 876, 915, 927.

● Plaintiff has adequately pled loss causation. The PSLRA requires only a showing of a "…causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 197 (2d Cir.2003); 15 U.S.C. § 78u-4(b)(4). Loss causation is not subject to the heightened pleading standards of Rule 9(b) or the PSLRA. *In re Citigroup Inc. Sec. Litig.,* 753 F.Supp.2d 206, 234 (S.D.N.Y.2010) ("Loss causation need not be pled with particularity.") Only a plain statement is required under Rule 8. Loss causation is adequately pled by alleging the materialization of a concealed risk that caused a stock price decline. *Leykin v. AT & T Corp.*, 423 F.Supp.2d 229, 240 (S.D.N.Y.2006).  Where some or all of the risk is concealed by the defendant's omissions, courts

34

have found loss causation sufficiently pled. *Nathel v. Siegal,* 592 F.Supp.2d 452, 467 (S.D.N.Y.2008). Plaintiff has adequately pled a causal link between the alleged misconduct and the economic harm he ultimately suffered. Defendants with nothing to hide, hide nothing.

• Plaintiff has adequately pled UBS manipulation of the CEFL share price: The FAC is replete with allegations of the intentional omissions of material risk factors from the offering document for CEFL, FAC ¶¶ 310-359, 364-381, which include reasons for the sharp drop in the CEFL share price in the face of a soaring market was the result of (1) securities industry and growing investor knowledge of UBS's undisclosed financial crimes, which prompted their failure to invest and to disinvest in CEFL; (2) the fact that major broker-dealers would not allow their customers to purchase UBS securities; (3) growing investor knowledge of the sharp drop in other UBS ETNs; (4) the manipulations and hedging activities of UBS; (5) growing knowledge that CEFL is a defective security; and (6) the failure of UBS to make a market in CEFL. The FAC ¶ 98 notes that Bank of America Merrill Lynch only allows its more than 17,300 brokers to sell exchange traded notes (ETN's) including CEFL to customers with at least $10 million in assets; Raymond James Financial has prohibited its 5,400 brokers from selling ETN's including CEFL since 2010. Exhibit M. FAC ¶¶ 87, 99, 189-192, 201-211, 236, 317, 332, 373-374, 446, 458-460, 469, 541-544, 613-646, 667, 674, 741, 747, 772, 790, 817-976.

• Plaintiff has adequately pled privity by alleging that the role of public accountants/auditors like EY is founded on third-party privity. Even more than the public auditors' client, the investing public relies on the public auditors' assurance in its audit opinion letters to assure that the public auditors' client has published financial documents including offering documents for securities that disclose all known material risk factors FAC ¶¶ 551-553, 897-898, 917-919. Courts have

35

even established "…[a]n exception to third party privity…where a known third party's reliance was the desired result of the representation." *Robert & Co. Assocs. v. Rhodes-Haverty P'ship,* 250 Ga. 680, 681, 300 S.E.2d 503, 504 (1983), in which the Georgia Supreme Court relied on the Restatement of the Law, Second, Torts, § 552, which states, in pertinent part: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." ● The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them. positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. FAC ¶¶ 248-293, 551-554, 778-780, 790, 797, 835, 843, 849, 855, 862, 869, 878, 890, 897, 904, 912, 917-927, 920-923, 928, 937, 952, 955, 965.

● Plaintiff has adequately pled violations of Sections 11 and 12(a)(2) of the Securities Act of 1933: The purpose of an offering document for a newly issued security is to provide accurate and meaningful material information so that investors can make informed decisions about whether or not to purchase stock in a particular offering, and to understand the risks inherent in the investment. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124, 73 S.Ct. 981, 97 L.Ed. 1494 (1953) (explaining that the purpose of the registration requirements of the Securities Act of 1933 "…is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions.)" "The Securities Act of 1933 was designed to provide investors with full

36

disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 195, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (citing H.R.Rep. No. 85, 73d Cong., 1st Sess., 1-5 (1933)). Sections 11 and 12 of the Act "…give effect to the basic purpose underlying the Securities Act — full disclosure to investors of pertinent information concerning the issuers of securities and the securities themselves — by imposing strict liability for material misinformation contained in a registration statement or prospectus." *In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1363 (S.D.Fla.2001).

● Plaintiff has adequately pled liability under Section 11 of the Act that imposes civil liability for materially misleading registration statements. Section 11 provides that: [i]n case any part of the registration statement, when such part became effective, omitted material risk factors required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... [may] sue ... every person who signed the registration statement ... [and] every underwriter with respect to, such security. 15 U.S.C. § 77k(a). A successful section 11 claim meets two requirements: (1) the defendant has an affirmative duty to disclose the information but fails to do so, and, (2) the omitted information was material. *Milman v. Box Hill Sys. Corp.,* 72 F.Supp.2d 220, 227 (S.D.N.Y. 1999). "When assessing whether omissions are material, courts must consider whether the omissions were material on the date the offering document was issued." *In re Unicapital,* 149 F.Supp.2d at 1363. ● If a plaintiff has purchased a U.S. registered security issued pursuant to a registration statement, as here, he need only show a material omission to establish his prima facie case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements. 15 U.S.C. § 77k(b). Here, at least one UBS

37

Defendant's involvement in the omissions resulted in him being awarded a huge bonus FAC ¶ 259. Also, each of the UBS Defendants own considerable shares of UBS stock and certain of the UBS Defendants possess large quantities of stock options, FAC ¶¶ 14-24. EY has annual audit fees of at least $83 million on the line, FAC ¶ 348 and EY partner income is a function of the audit fees resulting from the audits they supervise.

• Plaintiff has adequately pled Section 12(a)(2) liability under the Securities Act that imposes liability on any person who markets securities by means of an offering document that omits material risk factors. 15 U.S.C. § 77l; see also *Yung v. Lee,* 432 F.3d 142, 147 (2d Cir.2005). • Unlike claims under other sections of the Securities Act, Sections 11 and 12(a)(2) do not require a plaintiff to allege scienter or other elements of fraud. *Rombach v. Chang,* 355 F.3d 164, 169 n. 4 (2d Cir.2004); *Johnson v. Aegon USA, Inc.*, 355 F. Supp. 2d at 1343 (plaintiff need only allege the offering document omitted a material risk factor necessary to make the statements therein not misleading). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)). Accordingly, if there remains any doubt about scienter, reliance, loss causation or the efficacy or length of the pleadings or other disputed issues of law, the Court should not dismiss on such highly disputed issues of law as Defendants have asserted, but instead certify to the 2nd Circuit Court of Appeals all questions of disputed law. • Moreover, under Items 103 and 303 of Regulation S-K, something that is a "known" or "uncertain" and litigation that the offering party expects will have a "material" impact on the business must be disclosed in the offering document for a security. 17 C.F.R. § 229.303(a)(3)(ii). At page 67 of its Annual Report for 2015 UBS AG states that its financial crimes will have a "material" impact on their business. FAC ¶ 651. • Proof that Defendants willfully committed securities fraud lies in the fact that certain of the most critical concealed material risk factors, such as UBS's vast criminal history, its four-year term of criminal

probation, continuing investigations and prospective loss of license to conduct a securities

business in the U.S. are so obvious that the Defendants must have been aware of them. See

*Anwar v. Fairfield Greenwich Ltd.,* 728 F. Supp. 2d at 407. ● Further, since materiality is a

mixed question of law and fact, a Complaint may not properly be dismissed on the ground that

the alleged omissions are not material unless they are so obviously unimportant to a reasonable

investor that reasonable minds could not differ on the question of their importance, FAC ¶

474. *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F.3d

187, 197 (2d Cir.2009). In fact, the 2nd Circ. Court of Appeals has concluded that plaintiffs are

not responsible for knowing what appears in exhibits to a defendant's own SEC filings or

contemporaneous news articles, FAC ¶ 475. *In Re Flag Telecom Holdings Ltd. Sec. Litig.,* 618

F. Supp. 2d 311, 325 (S.D.N.Y. 2009). In *SEC v. Electronics Warehouse, Inc.,* 689 F. Supp. 53,

68 (D. Conn. 1988) the failure of an attorney to mention the criminal conviction of the seller for

mail fraud in an offering document was considered reckless as a matter of law. The court found

that counsel to the underwriter had a duty to disclose in the offering document that the issuer had

been indicted for mail fraud. See also *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.

Supp. 256, 259 (S.D.N.Y. 1989), where "An egregious refusal to see the obvious, or to

investigate the doubtful, may in some cases give rise to an inference of ... recklessness." ● In

*Spielman v. General Host Corp.,* 538 F.2d 39, 40 n. 2 (2d Cir. 1976) the court found as a matter

of law that a disclosure in a prospectus's appendix did not cure a misleading impression in the

main body of the prospectus. *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 603 (5th Cir.)

Material facts buried 100s of pages deep in a foreign bank's voluminous annual report deprived

Plaintiff of full and honest disclosure. *Werner v. Werner,* 267 F.3d 288 (3d Cir. Pa. 2001).

## CONCLUSION

Defendant's do not deny justice requires the revocation of UBS's license to conduct a securities business in the U.S. Failure to revoke is akin to handing the keys to Fort Knox to Willie Sutton and Al Capone. Similarly, to ignore UBS's failure to disclose its serious financial crimes and EY and Schwab's roles in aiding and abetting those egregious failures will encourage the UBS to intensify their evasions of the rule of U.S. securities law and obviate the need for full disclosure of material risk factors in offering documents. That EY closed its eyes to UBS criminal conduct does not mean UBS's crimes went unseen and now Defendants have been fully informed of the charges against them. UBS's crimes and failures to disclose material facts are numerous, the ETN scheme complex and the laws governing these, at times, arcane, all of which required an elaborate FAC that has thoroughly obviated the Defendant's MTDs with a compelling account of how the Defendants, singularly and in unison, concocted and weaponized a complex ETN financial security scheme that ultimately defrauded Plaintiff and many others. It also sets out facts sufficient to show that UBS has conducted its operations much like Madoff did, using their well-developed criminal expertise to line their pockets by relieving elderly investors of their retirement savings. Given the pleadings set out in the FAC and Opposition, the MTDs should be denied in their entirety with prejudice. *Eminence Capital L.L.C.,* 316 F.3d 1048, 1052-53 (9th Cir. 2003) and *Bare Escentuals,* 745 F. Supp. 2d at 1083 and Fed. R. Civ. P. 15(a) dictate that "leave to amend be freely given when justice so requires."

Respectfully signed and submitted by First Class Mail on: March 20, 2018

Robert Zimmerman, *Pro Se,*
329 Sandpiper Lane, Hampstead, NC 28443
Tel: 910-232-8990, Email: BobZimmerman@usa.com

40



Unit for the
Court for the
District of New York
Moynihan Court
Room 200
NY 10007

329 Sanciff
Hampstead, NC
28443

FROM: Robert Detwiler   (910) 208-9401
Gayle Detwiler
Ship on Site Surf City
201 Albion Blvd Suite C
HAMPSTEAD NC 28443
US

To Daniel Patrick Moynihan
US District Court for Southern Dist
500 PEARL ST RM 200
PROSE INTAKE SECTION
NEW YORK NY 10007

FedEx Ground   G

REF: Robert Zimmerman
DEPT:

10007

TRK# 7801 6447 1048

9622 0019 0 (000 000 0000) 0 00 7801 6447 1048

553-5578
10007  1316 99

USM-285
SDNY
P3