```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/24/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                  :

ROBERT ZIMMERMAN,                                          :

                                Plaintiff,                           :        17-CV-4503 (JMF)

                -v-                                   :        <u>OPINION AND ORDER</u>

UBS AG et al.,                                                :

                                Defendant.                    :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Robert Zimmerman, proceeding *pro se*, brings suit against UBS AG and various affiliated entities and individuals (collectively, the "UBS Defendants"), Ernst & Young LLP and various affiliated entities and individuals (together, the "E&Y Defendants"), and Charles Schwab & Co., Inc. and two associated individuals (the "Schwab Defendants"). Zimmerman alleges a total of twelve claims — including fraudulent inducement, aiding and abetting securities fraud, and unjust enrichment — stemming from his investment in a security issued and underwritten by UBS (the "Monthly Pay 2xLeveraged Exchange Traded Access Security," referred to by the parties by its call sign, "CEFL"). (Docket No. 65 ("Am. Compl."), ¶¶ 200, 816-957; *see id.* Ex. 2, at 88).[1] Now pending are five motions: motions by the Schwab Defendants to compel arbitration and for sanctions (Docket Nos. 19, 23), motions by the E&Y Defendants and the UBS Defendants to dismiss (Docket Nos. 72, 75), and a motion by Zimmerman for sanctions (Docket

---

[1]     Specifically, CEFL was issued by UBS AG and sold by UBS Securities LLC. (*See* Docket No. 62, Ex. 5, at 3). For convenience, the Court refers to these and related entities collectively as "UBS."

No. 40). For the following reasons, the motions to compel arbitration and to dismiss are granted, while the motions for sanctions are denied.

## BACKGROUND

The material facts are not significantly disputed. Nevertheless, the following relevant facts, which are taken from the Amended Complaint, documents it incorporates, and matters of which the Court may take judicial notice, are construed in the light most favorable to Zimmerman. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). Zimmerman alleges that, in 2013, he invested in the CEFL security through his Schwab account after reading UBS's "Product Supplement." (Am. Compl. ¶¶ 200, 459-60). Zimmerman "continued investing in CEFL until approximately April 2015," when he sold all of his shares in the security. (*Id.* ¶ 459). Zimmerman claims that he was fraudulently induced to invest in CEFL — an "investment [which] would never have occurred had [Zimmerman] been aware of UBS's vast criminal history" — and that he suffered losses of "approximately $180,000-$400,000" as a result. (*Id.* ¶¶ 460, 541).

In January 2016, Zimmerman filed an arbitration claim with respect to the CEFL investment against UBS Financial Services and Schwab before the Financial Industry Regulatory Authority ("FINRA"). (*See* Docket No. 21 ("Crowther Decl."), Ex. 1 ("FINRA Claim")). In that proceeding, Zimmerman contended that UBS had defrauded him by concealing certain risks and investigations into UBS's business practices. (*Id.* at 2-6). UBS responded by filing for an injunction in the United States District for the Eastern District of North Carolina to prohibit Zimmerman from pursuing arbitration. *See UBS Fin. Servs., Inc. v. Zimmerman*, No. 5:16-CV-155-FL, 2016 WL 7017278, at *1 (E.D.N.C. Dec. 1, 2016). Zimmerman responded with counterclaims against UBS, asserting — as he does here — securities fraud and negligent

misrepresentation. *Id.* The District Court dismissed Zimmerman's counterclaims, *see id.*, and later granted UBS's injunction, finding that UBS had no arbitration agreement with Zimmerman and thus could not be forced to participate in the FINRA arbitration, *see UBS Fin. Servs., Inc. v. Zimmerman*, No. 5:16-CV-155-FL, 2017 WL 2963445, at *3 (E.D.N.C. July 11, 2017).

In the meantime, in March 2017, Schwab and Zimmerman executed a Confidential Settlement Agreement and General Release settling the claims brought in arbitration. (Crowther Decl., Ex. 5 ("Settlement Agreement")). Per the terms of that agreement, Schwab agreed to pay Zimmerman $5,000 "as full and final settlement of the Dispute," defined as the "dispute . . . between Schwab and [Zimmerman] regarding [Zimmerman's Schwab account], as more fully described in FINRA Arbitration Case No. 15-03460, styled *Bob Zimmerman v. UBS Financial Services, Inc. and Charles Schwab & Co, Inc.*" (*Id.* at 1). In exchange for that payment, Zimmerman agreed to dismiss his arbitration claims with prejudice and "to release and forever discharge Schwab" and its affiliates "from any and all claims . . . , whether now known or unknown, suspected or unsuspected, which he ever had, owned or held or now has, owns or holds, arising out of or in any way connected with the Dispute, with Schwab, or with Schwab's handling or administration of the Account from the date the Account was opened to the present." (*Id.* at ¶ 3). The parties also agreed to resolve any disputes "regarding the meaning or interpretation of [the] Agreement, or the rights and obligations of any of the parties hereto," through "binding arbitration." (*Id.* ¶ 12).

## DISCUSSION

As noted, there are five motions now pending: the Schwab Defendants' motion to compel arbitration, the E&Y Defendants' and the UBS Defendants' motions to dismiss, the Schwab

Defendants' motion for sanctions, and Zimmerman's own motion for sanctions. The Court addresses them in that order.

**A. The Schwab Defendants' Motion to Compel Arbitration**

The Schwab Defendants do not move to dismiss Zimmerman's claims, but move instead, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration. (Docket No. 23; *see* Docket No. 24, at 7-8). In evaluating a motion to compel arbitration, a district court must apply the summary judgment standard, and thus may grant the motion only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." *Cohen v. UBS Fin. Servs., Inc.*, 12-CV-2147 (BSJ) (JLC), 2012 WL 6041634, at *1 (S.D.N.Y. Dec. 4, 2012) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). To decide "whether the parties agreed to arbitrate a certain matter" for purposes of the FAA, a court must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Cohen*, 2012 WL 6041634, at *2 (quoting *LaVoice v. UBS Fin. Servs., Inc.*, No. 11-CV-2308 (BSJ) (JLC), 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012)); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

Although there is a general presumption that courts, not arbitrators, decide issues of arbitrability, *see Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009), this presumption can be rebutted with "clear and unmistakable evidence from the arbitration

agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator," *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks omitted). "Clear and unmistakable evidence exists when an arbitration clause explicitly delegates arbitrability determinations to the arbitrator." *Arshad v. Transp. Sys., Inc.*, 183 F. Supp. 3d 442, 446 (S.D.N.Y. 2016).

Applying those standards here, the Court grants the Schwab Defendants' motion to compel arbitration. First, to the extent that Zimmerman brings claims under his initial agreement with Schwab, the arbitration clause in that agreement unambiguously requires that any and all disputes — including disputes about whether or which claims must go to arbitration in the first instance — be arbitrated. It provides, in relevant part, as follows:

> Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers . . . , including any controversy over the arbitrability of a dispute, will be settled by arbitration.

(Docket No. 25 ("Schiller Decl."), Ex. 1 ("Schwab Agreement"), at § 15). Second, to the extent that Zimmerman brings claims relating to the March 2017 Settlement Agreement, the upshot is the same, as that agreement provides that "[t]he parties agree that any dispute regarding the meaning or interpretation of [the] Agreement, or the rights and obligations of any of the parties hereto, shall be resolved through binding arbitration." (Settlement Agreement ¶ 12). The bottom line is that Zimmerman cannot (and does not) dispute that his claims in this case are either related to "transactions in the Account or any other Schwab account," (Schwab Agreement § 15), or related to "the rights and obligations" of the parties under the Settlement Agreement,

5

(Settlement Agreement ¶ 13) — if not related to both. It follows that the Schwab Defendants' motion to compel arbitration must be and is GRANTED.[2]

**B. The UBS Defendants' and E&Y Defendants' Motions to Dismiss**

Next, the UBS Defendants and the E&Y Defendants separately move to dismiss the Amended Complaint pursuant to Rules 4(m), 8, 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Docket No. 73 ("E&Y Br."), at 5; Docket No. 76 ("UBS Br."), at 1). While the two motions do not overlap entirely, they share at least one compelling argument: that CEFL's offering documents included or incorporated the very disclosures that Zimmerman now complains were lacking. (*See* E&Y Br. 12-13; UBS Br. 7-9). These disclosures are fatal to each of Zimmerman's claims, and require dismissal of those claims in their entirety against the UBS Defendants and the E&Y Defendants. Accordingly, the Court need not and does not reach those Defendants' remaining arguments.

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319 (S.D.N.Y. 2012). A court may not dismiss claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the

---

[2] Zimmerman contends that he does not recall assenting to the Schwab Agreement and that FINRA is inherently discriminatory and unfair to him. (Docket No. 31, at 6, 10). Zimmerman fails to support his first argument with any evidence; in any event, it is belied by both his initiation of arbitration before FINRA in January 2016 and his contention that he was coerced into signing the Schwab Agreement. (*See id.* at 7). Zimmerman's claim that FINRA is unfairly biased against him is "too speculative and attenuated to justify invalidation of all contemplated arbitration, or to enjoin it before it commences." *Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*, 698 F. Supp. 504, 517 (S.D.N.Y. 1988) (rejecting a similar claim).

6

court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.  Where, as here, a plaintiff proceeds *pro se*, his pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).  "Nonetheless, a *pro se* litigant must still state a plausible claim for relief.  Put another way, the Court's duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Thomas v. N.Y.C. Dep't of Educ.*, No. 15-CV-8934 (JMF), 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks, citation, and alterations omitted).

  Here, each of Zimmerman's twelve claims turns on the concealment of "UBS's vast history of criminality" in the CEFL prospectus.  (Am. Compl. ¶ 820; *see also id.* ¶¶ 835, 843, 849, 871, 892, 906, 930, 939, 949, 957).  In each of these counts, Zimmerman charges that Defendants "conceal[ed] 26 material facts regarding CEFL." (*Id.* ¶ 831).  But these "26 material facts" (which, in the Court's parsing of the Amended Complaint, seem to be closer to ten facts, *see id.* ¶¶ 335-44) were either adequately disclosed or are too speculative to require disclosure. Zimmerman relies principally on UBS's publicly filed 2015 Annual Report, in which UBS disclosed certain misconduct, as evidence of material facts that were undisclosed in 2013, when he invested in CEFL.  (*See, e.g.*, *id.* ¶¶ 221, 240).  But UBS made nearly identical disclosures in materials available to Zimmerman in 2013, and which Zimmerman concedes he read.  (*See, e.g.*,

*id.* ¶ 459). In connection with the CEFL security, UBS issued a Product Supplement, which summarized the product and described certain risk factors inherent to CEFL. (Docket No. 74 ("O'Brien Decl."), Ex. A ("CEFL Product Supplement")). For instance, UBS warned that CEFL is "not secured debt and [is] significantly riskier than ordinary unsecured debt securities." (CEFL Product Supplement S-18). The Product Supplement also incorporated and attached a general prospectus about UBS securities. (CEFL Product Supplement i ("You should rely only on the information incorporated by reference or provided in this product supplement or the accompanying prospectus."); *see also* O'Brien Decl., Ex. B ("UBS Prospectus")). In the UBS Prospectus, UBS warned that securities like CEFL "may present a high level of risk, and those who invest in some indexed securities may lose their entire investment." (UBS Prospectus 52).

Significantly, the UBS Prospectus also explicitly referenced and incorporated UBS's 2013 Annual Report. Under a heading entitled "Risk Factors Relating to UBS and Other Considerations Relating to the Securities," the UBS Prospectus warned investors: "For a discussion of important business and financial risks relating to UBS AG, please see 'Risk Factors' in Part I, Item 3D of our Annual Report . . . which is incorporated in this prospectus by reference." (UBS Prospectus 2; *see also id.* at 3 ("More detailed information about [risk] factors is set forth in . . . UBS's Annual Report . . . ."); *id.* at 4 ("We incorporate by reference in this prospectus: UBS AG's Annual Report on Form 20-F for the year ended December 31, 2013 . . . .")).[3] UBS's 2013 Annual Report, in turn, sufficiently and expressly disclosed the alleged

---

[3] Zimmerman contends that UBS's disclosures were "buried hundreds of pages deep" and, thus, "conceal[ed] or obscure[d] the information sought to be disclosed." (Docket No. 83, at 17). That contention, however, is belied by the prominence that the disclosures received in UBS's materials, including the multiple references to the ten-page section on UBS's litigation and regulatory exposure on the second and third pages of UBS's Prospectus. (*See, e.g.*, UBS Prospectus 2 ("For a discussion of important business and financial risks relating to UBS AG, please see 'Risk Factors' in Part I, Item 3D of our Annual Report . . . .")). Thus, the Court

misconduct of which Zimmerman now complains.  UBS disclosed that it "agreed to pay a fine of USD 500 million" as part of a settlement related to the Department of Justice's investigation of benchmark interest rates.  (O'Brien Decl., Ex. C ("UBS 2013 Annual Report"), at 422).  UBS also disclosed, *inter alia*, that it was under investigation for illicitly soliciting clients in France, that it was fending off significant litigation relating to residential mortgage-backed securities, that it had been sued in connection with fraud relating to Bernie Madoff, and that it had paid fines in connection with proceedings in Italy.  (*Id.* at 416-25).  In sum, UBS disclosed that it "operates in a legal and regulatory environment that exposes it to significant litigation and similar risks arising from disputes and regulatory proceedings."  (*Id.* at 416).

Given Zimmerman's express allegation (*see* Am. Compl. ¶ 459) that he relied on the UBS Product Supplement — which attached and incorporated the UBS Prospectus and the 2013 Annual Report — his contention that Defendants "intentionally concealed the sums UBS paid in fines" (Am. Compl. ¶ 338) is not plausible.  *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07-CV-11225 (RJS), 2012 WL 4471265, at *30 (S.D.N.Y. Sept. 28, 2012) (relying on a UBS Annual Report, which was incorporated into a security offering, to conclude that UBS "adequately met its obligation" by disclosing certain uncharged conduct), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 350 (S.D.N.Y. 2005) (dismissing a securities fraud claim on the ground that it was "premised on facts that were adequately disclosed").  Further, Zimmerman's claim that UBS concealed the fact that the Department of Justice revoked a non-

---

concludes, the disclosures were not inscrutable or hidden from Zimmerman's review.  *See, e.g.*, *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 763 (2d Cir. 1991) (rejecting an analogous argument where the section containing relevant disclosures was listed in the Table of Contents and where the prospectus "unambiguously communicate[d] the importance of reading all relevant material contained within the prospectus").

prosecution agreement with UBS is even more implausible, as that agreement was not revoked until May 2015 — well after Zimmerman invested in CEFL. (*See* O'Brien Decl., Ex. D ("UBS 2015 Annual Report"), at 644). UBS's adequate disclosure of the material facts that Zimmerman identifies is fatal to each of Zimmerman's causes of action. (*See, e.g.*, Am. Compl. ¶ 820 (arguing that Defendants "conspired to conceal UBS's vast history of criminality"); *id.* ¶ 835 (arguing that Defendants aided and abetted securities fraud by omitting "the 26 material risk factors from the Product Supplement"); *id.* ¶ 842 (arguing that Defendants fraudulently concealed material information)). Because UBS adequately disclosed the material facts that Zimmerman identifies, the UBS Defendants' and the E&Y Defendants' motions to dismiss are GRANTED.

## D.  The Motions for Sanctions

Finally, the Schwab Defendants and Zimmerman have filed competing motions for sanctions. First, the Schwab Defendants argue that Zimmerman should be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure and made to pay Schwab's attorneys' fees "[a]s a deterrent against future duplicative and vexatious litigation." (Docket No. 20 ("Schwab's Sanctions Mem."), at 1). The Schwab Defendants contend that they repeatedly warned Zimmerman that he had already settled his claims against Schwab and that any dispute over the settlement must be, per the Settlement Agreement, resolved in arbitration. (*Id.* at 2). Second, Zimmerman seeks sanctions against the Schwab Defendants on the ground that they violated the California Evidence Code by disclosing the Settlement Agreement. (Docket No. 40, at 3).

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing

10

law or good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal citations and quotation marks omitted).  Rule 11 applies to both attorneys and *pro se* litigants in guarding against frivolous, vexatious, or scurrilous lawsuits.  *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989).  Indeed, the fact that a litigant appears *pro se* "does not shield him from Rule 11 sanctions because one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *Malley v. N.Y.C. Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) (internal quotation marks and citations omitted).  Nevertheless, "the court may consider the special circumstances of litigants who are untutored in the law."  *Simpson v. Putnam Cty. Nat'l Bank of Carmel*, 112 F. Supp. 2d 284, 292 (S.D.N.Y. 2000) (quoting *Maduakolam*, 866 F.2d at 56).  "Courts impose Rule 11 sanctions with discretion and caution," particularly when it comes to *pro se* litigants.  *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 119 (E.D.N.Y. 2005) (citing *Caisse Nationale de Credit Agricole-CNCA v. Valcorp., Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)).

      Applying those standards, the Court is tempted to impose sanctions on Zimmerman for filing this lawsuit against the Schwab Defendants despite the clear arbitration provisions in both the Schwab Agreement and the Settlement Agreement.  Nevertheless, exercising its discretion, the Court declines to do so, primarily because Zimmerman is proceeding *pro se*.  *See, e.g.*, *id.* (declining to impose sanctions on a *pro se* plaintiff even though the plaintiff's "petition [was] frivolous and unwarranted"); *Long v. Key Bank, N.A.*, No. 08-CV-6497 (MAT), 2009 WL 2580101, at *3 n.2 (W.D.N.Y. Aug. 19, 2009) (declining to impose sanctions on a *pro se* plaintiff while noting that, "[h]ad [plaintiff's] claims been raised by an attorney," the Court likely would have imposed sanctions).  Nevertheless, Zimmerman is warned — again — that the filing

11

of another frivolous action or motion relating to the claims he presses here, and previously pressed in arbitration and the District of North Carolina, may result in monetary sanctions under Rule 11.

By contrast, Zimmerman's own motion for sanctions is plainly frivolous and must be denied. Indeed, it would be absurd to suggest, let alone hold, that a defendant who is sued may not submit an otherwise confidential settlement agreement to the court in aid of its argument that the lawsuit is barred by a release or an arbitration clause. The California Evidence Code — upon which Zimmerman relies — does not suggest otherwise. Putting aside the question of whether the state's Code even applies in federal court, the sections of the Code cited by Zimmerman concern communications and agreements in the context of meditation. *See* Cal. Evid. Code. §§ 1119-1123. Moreover, the Code expressly provides that a "written settlement agreement prepared in the course of, or pursuant to, a mediation, is *not* made inadmissible, or protected from disclosure, . . . if the agreement is signed by the settling parties and . . . [t]he agreement provides that it is enforceable or binding or words to that effect." *Id.* § 1123 (emphasis added). That is the case here, as the Settlement Agreement states that it "shall be interpreted, *enforced*, and governed by and under the laws of the State of California." (Settlement Agreement ¶ 11 (emphasis added)). Thus, the Schwab Defendants plainly did nothing wrong in submitting the Settlement Agreement in support of their argument that Zimmerman had released the claims he brings here and agreed to arbitrate. *See Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir. 1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.").

## CONCLUSION

For the reasons discussed above, the Schwab Defendants' motion to compel arbitration, the UBS Defendants' motion to dismiss, and the E&Y Defendants' motion to dismiss are GRANTED, and the two motions for sanctions are DENIED.

The Court declines to *sua sponte* grant Zimmerman leave to amend his complaint. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, Zimmerman was already granted leave to amend the complaint to cure deficiencies raised by the UBS Defendants' and the E&Y Defendants' motions to dismiss and was explicitly cautioned that he would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (Docket No. 35). Additionally, many — if not all — of the problems with Zimmerman's claims are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Finally, Zimmerman "has not requested permission to file [an amended complaint], nor has he given any indication that he is in possession of facts that would cure the problems" identified in the instant opinion dismissing his claims. *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014). Accordingly, the Court declines to grant Zimmerman leave to amend his complaint for a second time.

Finally, in light of the fact that the only claims remaining — against the Schwab Defendants — are subject to arbitration, this action is stayed pending resolution of the

arbitration.  *See Katz*, 794 F.3d at 345 ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay [is] requested.")).  That said, the Court sees no reason to keep the case open pending arbitration.  Accordingly, the Clerk of Court is directed (1) to terminate Docket Nos. 19, 23, 40, 72, and 75; (2) to terminate all Defendants as parties, *except for* the Schwab Defendants (namely, Charles Schwab & Co., Inc., Charles Schwab, and Walt Bettinger); and (3) to administratively close the case, without prejudice to either Zimmerman or the Schwab Defendants moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Date: August 24, 2018
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

14